**Brian HORAN, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 69S00–9510–CR–1118.

Supreme Court of Indiana.

June 27, 1997.

Rehearing Denied Sept. 24, 1997.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for Appellant.

Pamela Carter, Attorney General, Andrew L. Hedges, Deputy Attorney General, Indianapolis, for Appellee.

SULLIVAN, Justice.

A jury convicted Defendant Brian Horan of Murder[1] and Battery,[2] on June 14, 1992. On July 28, 1992, Horan was sentenced to eight years on the battery count and sixty years on the murder count. Horan appealed the conviction because his tendered instruction requesting the jury to draw no inference from his refusal to testify was denied. We

1. Ind.Code § 35–42–1–1 (1993).

2. Ind.Code § 35–42–2–1 (1993 & Supp.1996).

vacated this conviction and remanded the case to the trial court for a new trial. *Horan v. State,* 642 N.E.2d 1374 (Ind.1994).[3]

On April 7, 1995, a second jury convicted Horan of Murder and Battery. The trial court sentenced Horan to fifty-five years on the murder count and eight years on the battery count. The sentences were to be served consecutively.

We have jurisdiction over this direct appeal because the longest single sentence exceeds fifty years. Ind. Const. art. 7, § 4; Ind.Appellate Rule 4(A)(7); *Wiseman v. State,* 521 N.E.2d 942, 943 (Ind.1988).

*Background*

A summary of the facts most favorable to the verdicts follows. For a more complete discussion, see our opinion in *Owens v. State,* 659 N.E.2d 466, 469 (Ind.1995). On the evening of June 21, 1991, Brian Horan and brothers Michael and Rodney Owens had been drinking and riding around in Rodney's Thunderbird when they encountered Gary Bennett and Robert Hendricks. Horan and Michael Owens briefly argued with Bennett about Bennett's having had an affair with both Horan's and Rodney's wives. After the argument subsided, Bennett and Hendricks, who had also been drinking, got into the car to drive around and drink with the other three men. Horan, as he would the rest of the evening, did the driving.

This driving and drinking expedition continued until reaching a secluded country area known as Devil's Elbow. At some point, the subject of Bennett's affair with Horan's wife was revisited. Horan then began hitting Bennett and the violence escalated. Michael Owens joined Horan in repeatedly punching and kicking Bennett in the head, chest, groin and stomach and then slamming Bennett's head against the trunk of the car four to five times.

Eventually, the group left Bennett at Devil's Elbow and drove to Rodney Owens's house. Covered in blood, Horan showered

3. In *Owens v. State,* 659 N.E.2d 466 (Ind.1995), we affirmed the Murder conviction of Michael Owens, Horan's co-defendant in his 1992 trial.

and changed clothes. Horan, Michael Owens and Hendricks then returned to Devil's Elbow in the Thunderbird. Upon returning to Devil's Elbow, the men found Bennett slumped over a fence. Horan said that he could not "believe the son-of-a bitch was still up," and along with Owens resumed the beating. After this second beating episode, all three men again left Bennett and drove back to town.

After taking Hendricks home, Horan and Michael Owens drove around town but eventually returned to Devil's Elbow. Bennett was dead. Horan and Michael Owens put Bennett's body in the trunk of the Thunderbird. Later the next morning, the police found Bennett's charred body in the trunk of the Thunderbird. Through dental records, police were able to identify Bennett's body. The autopsy revealed that the cause of death was severe trauma to the head before the body was burned.

We will provide additional facts as necessary.

The issues on appeal are as follows:

1. Whether Horan was entitled to instructions on Voluntary Manslaughter and Reckless Homicide.

2. Whether the trial court improperly instructed the jury that voluntary intoxication is a defense only to crimes that require an intentional act.

3. Whether the trial court erred by admitting Horan's statement to the police.

4. Whether the trial court improperly permitted the State to read witness Hendricks's prior consistent statement into evidence.

5. Whether there was sufficient evidence to prove beyond a reasonable doubt that Horan committed Murder.

6. Whether Horan's convictions for Murder and Battery subjected him to double jeopardy.

## Discussion

### I

■ Horan contends that the trial court committed reversible error by denying his proposed jury instructions on Voluntary Manslaughter and Reckless Homicide as lesser included offenses of Murder. In *Wright v. State*, 658 N.E.2d 563 (Ind.1995), we set forth the proper analysis to determine when a trial court should, upon request, instruct the jury on a lesser included offense of the crime charged. This analysis contains three steps: (1) a determination of whether the lesser included offense is *inherently* included in the crime charged; if not,(2) a determination of whether the lesser included offense is *factually* included in the crime charged; and, if either, (3) a determination of whether a serious evidentiary dispute existed whereby the jury could conclude the lesser offense was committed but not the greater. *Id.* at 566–67. If the third step is reached and answered in the affirmative, the requested instruction should be given.

### A

■ Horan first argues that the trial court erred in refusing his instruction on Voluntary Manslaughter, an *inherently* lesser included offense of Murder. To determine if the lesser offense is *inherently* included in the crime charged, the court must compare the statute defining the crime charged with the statute defining the alleged lesser included offense. "If (a) the alleged lesser included offense may be established 'by proof of the same material elements or less than all the material elements' defining the crime charged, or (b) the only feature distinguishing the alleged lesser included offense from the crime charged is that a lesser culpability is required to establish the commission of the lesser offense, then the alleged lesser included offense is *inherently* included in the crime charged." *Id.* (citations and footnotes omitted).

■ Indiana's Murder statute provides in relevant part that "[a] person who ... knowingly or intentionally kills another human being ... commits Murder, a felony." Ind. Code § 35–42–1–1 (1993). By comparison, Indiana's Voluntary Manslaughter statute provides in relevant part: "A person who knowingly or intentionally kills another human being while acting under sudden heat commits Voluntary Manslaughter, a Class B

felony." Ind.Code § 35–42–1–3(a) (1993). Sudden heat is a mitigating factor which reduces murderous activity from Murder to Voluntary Manslaughter. Ind.Code § 35–42–1–3(b) (1993). Sudden heat is not another element of Voluntary Manslaughter. *Isom v. State*, 651 N.E.2d 1151, 1152 (Ind.1995). *See also, Griffin v. State*, 644 N.E.2d 561, 562 (Ind.1994) ("[T]he elements of [Murder and Voluntary Manslaughter] are identical. Voluntary manslaughter is simply Murder mitigated by evidence of 'sudden heat.' "); *Estes v. State*, 451 N.E.2d 313, 314 (Ind.1983) ("Sudden heat is a mitigating factor in conduct that would otherwise be Murder. It is not an element of Voluntary Manslaughter."). A comparison of the Murder and Voluntary Manslaughter statutes demonstrates that the elements of these crimes are identical save for the mitigating factor of "sudden heat." Voluntary Manslaughter is an *inherently* lesser included offense of Murder.[4]

■ Because Voluntary Manslaughter is inherently included in a Murder charge, we turn to step three of the *Wright* analysis to determine whether Horan's instruction should have been granted. A trial court should grant the requested Voluntary Manslaughter instruction if the evidence demonstrates a serious evidentiary dispute regarding the mitigating factor of "sudden heat." *Griffin v. State*, 644 N.E.2d at 562 (quoting *Roark v. State*, 573 N.E.2d 881, 882 (Ind. 1991) (Voluntary Manslaughter instruction is warranted if there is " 'any appreciable evidence of sudden heat.' ")).

■ The evidence here does not demonstrate that Horan acted in sudden heat. Sudden heat requires " 'sufficient provocation to engender ... passion' " which is demonstrated by " 'anger, rage, sudden resentment, or terror that is sufficient to obscure the reason of an ordinary person, prevent deliberation and premeditation, and render the defendant incapable of cool reflection.' " *Griffin v. State*, 644 N.E.2d at 562 (quoting *Johnson v. State*, 518 N.E.2d 1073, 1077 (Ind. 1988)). Horan contends that the evidence

establishing that Bennett had an affair with his wife coupled with Bennett's admission to the affair was sufficient to establish that Horan acted with sudden heat. Horan further points to Hendricks's testimony establishing that Horan "just flared up" at Devil's Elbow to demonstrate his actions were in sudden heat. (R. 2199.) However, Horan and Bennett had previously argued about Bennett's affair in town while Bennett was on his bicycle. Horan then invited Bennett to join them in the car, and after numerous stops and drinks in and around town, the men ended up at Devil's Elbow.

Much time had passed between the initial discussion between Bennett and Horan regarding Bennett's affair thereby discounting Horan's claim of a serious evidentiary dispute that he acted in sudden heat. Further, Horan hit Bennett and left him bloody and bruised at Devil's Elbow only to return to the scene to continue the beating. This behavior does not demonstrate that Horan acted in sudden resentment of Bennett's affair with Horan's wife. He had ample time for "cool reflection" between the initial argument and the first beating at Devil's Elbow, as well as to deliberate his return to Devil's Elbow to continue beating Bennett. Given the absence of a serious evidentiary dispute regarding the sudden heat factor, the trial court did not commit reversible error by denying Horan's Voluntary Manslaughter instruction.

**B**

■ Horan also contends that the trial court committed reversible error by denying his tendered instruction on Reckless Homicide. The same three-part analysis is applied. A comparison of statutes under this analysis establishes that Reckless Homicide is an *inherently* lesser included offense of Murder. *Compare* Ind.Code § 35–42–1–1 with Ind.Code § 35–42–1–5 (1993). *See Wright*, 658 N.E.2d at 567 (Reckless Homicide is a lesser included offense because the only distinguishing factor between the two crimes is the lesser culpability). This again

---

**4.** "A charging instrument *never* forecloses or precludes an instruction on an inherently lesser included offense;" therefore, the information charging Horan with Murder could not have

been written so as to preclude the lesser included offense of Voluntary Manslaughter. *Wright*, 658 N.E.2d at 567.

brings us to the third step of the *Wright* analysis—whether a serious evidentiary dispute existed warranting a Reckless Homicide instruction.

A person acts recklessly "if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Ind. Code § 35–41–2–2(c) (1993). Murder as charged here requires the killing to have been committed "knowingly." Ind.Code § 35–42–1–1. A person acts knowingly if, when the person engages in the conduct, the person is aware of a high probability that the person is doing so. Ind.Code § 35–41–2–2(b). Given the facts set forth under *Background, supra,* we think that the evidence here was so overwhelming that there was no serious evidentiary dispute but that when Horan beat Bennett, he was aware of the high probability that his conduct would result in Bennett's death. Horan admits to hitting and kicking Bennett repeatedly—and not on only one occasion but upon a second occasion when Horan deliberately returned to Devil's Elbow to hit and kick Bennett again. The beatings were extensive and severe. Under these circumstances, the jury could not conclude that the lesser offense was committed but not the greater. The trial court did not err when it refused the Reckless Homicide instruction.

## II

■ Horan asserts that the trial court committed reversible error when it instructed the jury that involuntary intoxication is a defense only to crimes that require an intentional act.

The trial court gave the following instruction on voluntary intoxication:

> Voluntary intoxication is a defense to the crimes of Battery and Murder. Voluntary intoxication is a defense only to the extent

that it negates an element of an offense referred to by the phrase "with intent to" or "with an intention to". In order for intoxication to relieve the Defendant from responsibility for the crime charged, the Defendant must have been so intoxicated as to be incapable of having the intent to commit the offense charged. The State has the burden of disproving this defense beyond a reasonable doubt.

R. 419. Although the first sentence of the instruction clearly states that voluntary intoxication is a defense to Murder, the second sentence quotes the language found in Indiana Code § 35–41–3–5(b) (1993). Horan points to *Terry v. State*, 465 N.E.2d 1085, 1088 (Ind.1984), in which Chief Justice Givan declared this part of the statute "void and without effect" because the defense of voluntary intoxication can be offered for any crime. As such, Horan contends that it was error for the trial court to include this sentence in its instruction on voluntary intoxication.[5]

■ Horan did not object to the trial court's instruction on voluntary intoxication[6] and appellate review of such error is waived and forfeited. *Tiller v. State*, 541 N.E.2d 885, 890 (Ind.1989). Horan seeks to avoid waiver or forfeiture of this issue on grounds that it constituted "fundamental error" for the trial court to give the second sentence of the instruction; "a fundamental error may be considered on appeal even if not raised by proper objection at trial." *Blackmon v. State*, 455 N.E.2d 586, 590 (Ind.1983). "To be categorized as fundamental error and thus to transcend our procedural requirements, the error must be blatant, and the potential for harm must be substantial and appear clearly and prospectively." *Nelson v. State*, 274 Ind. 218, 220, 409 N.E.2d 637, 638 (Ind. 1980) (citations omitted).

---

5. In *State v. Van Cleave*, 674 N.E.2d 1293, 1303 (Ind.1996), we pointed out that, as a result of *Montana v. Egelhoff*, —— U.S. ——, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996), *Terry* was no longer good law to the extent it suggested Ind. Code § 35–41–3–5(b) violates federal due process guarantees. In *Van Cleave*, we expressed no further opinion on the precedential value of *Terry*

in light of *Egelhoff*. Because of the way we resolve the issue here, that question remains open.

6. In fact, defense counsel advised the court in response to a specific question that he had no objection to the instruction.

Horan's argument is that because the jury was told that the voluntary intoxication defense is only available for "with intent to" or "with an intention to" offenses, and Horan was charged with "knowingly" killing Bennett, the jury was effectively told that voluntary intoxication was not available as a defense here. This, Horan contends, relieved the State of its burden to disprove the intoxication defense. "This is akin," Horan says, "to being relieved of the burden of proving an element of the crime charged" and, as such, constitutes fundamental error.

We reject this argument. First, other instructions clearly imposed upon the State the burden of proving beyond a reasonable doubt that Horan knowingly killed Bennett. The State was not relieved of any of its burden to prove beyond a reasonable doubt an element of the crime charged.

Second, under Indiana law, an intoxication instruction should be given only where "the evidence relevant to the defense, if believed, was such that it could have created a reasonable doubt in the jury's mind that the accused had acted with the requisite mental state." *State v. Van Cleave*, 674 N.E.2d 1293, 1303 (Ind.1996). "Evidence that shows a defendant was not so intoxicated that the defendant could indeed form the requisite *mens rea* includes such things as his ability to devise a plan, operate equipment, instruct the behavior of others, or carry out acts requiring physical skill." *Owens*, 659 N.E.2d at 473 (citing *Terry* ). As the facts described under *Background, supra,* and the discussion of the denial of the requested instruction on Reckless Homicide in part I–B, *supra,* both illustrate, Horan devised plans, operated equipment, instructed the behavior of others, and carried out acts requiring physical skill. The evidence relevant to the defense of voluntary intoxication here, even if believed, was not such that it could have created a reasonable doubt in the jury's mind as to whether Horan knowingly killed Bennett. And since Horan was not

entitled to a voluntary intoxication instruction in the first place, it could not have been fundamental error to give a defective one.[7]

### III

Horan next contends that the trial court committed reversible error by admitting his statement to the arresting police officer shortly after being taken into custody.

At trial, an Indiana State Police officer testified as follows: Following a manhunt, the testifying trooper apprehended Horan hiding in a weeded bushy area. The trooper handcuffed Horan and walked him approximately 75 feet to a roadway where the trooper's vehicle was parked. When they reached the roadway, the trooper read Horan a card advising him of his *Miranda* rights[8] and then asked Horan if he understood those rights. Horan "indicated that he did understand those" rights. The trooper then asked Horan "what had happened." Horan gave the trooper a statement.

Horan asked the trial court to suppress the statement and the trial court held a hearing on the suppression motion outside the presence of the jury. At the conclusion of the suppression hearing, the trial court denied the defense motion and the trooper was permitted to relate Horan's statement.

Horan now renews his claim made at trial that the State failed to establish beyond a reasonable doubt that he knowingly and voluntarily waived his *Miranda* rights. The decision whether to admit a defendant's custodial statement is within the discretion of the trial court. *Jones v. State*, 655 N.E.2d 49, 56 (Ind.1995). However, that discretion is subject to the State proving "beyond a reasonable doubt that the statement was preceded by a knowing, voluntary, and intelligent waiver of the privilege against self-incrimination and the right to counsel." *Brewer v. State*, 646 N.E.2d 1382, 1385 (Ind. 1995) (citing *Jackson v. State*, 274 Ind. 297,

---

7. The fact that Horan was not entitled to a voluntary intoxication instruction at all suggests a good strategic reason why defense counsel did not object to the defect in it. Counsel might well have concluded that a defective instruction on this point was better than none at all and that

objecting to part of it might provoke the State into objecting to giving it in the first place.

8. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

411 N.E.2d 609, 610–11 (1980); Ind. Const. art. I, § 14); *see also Johnson v. State,* 584 N.E.2d 1092, 1098–99 (Ind.1992). When reviewing a challenge to the trial court's decision, we examine the record for substantial, probative evidence of voluntariness; we do not reweigh the evidence. *Jones,* 655 N.E.2d at 56 (citing *Collins v. State,* 509 N.E.2d 827, 830 (Ind.1987)).

The evidence in support of the trial court's ruling was as follows: Horan was fully informed of his *Miranda* rights prior to his response to the officer's question. He indicated that he understood those rights prior to his response to the officer's question. There was no suggestion that his statement was in any way coerced or induced by "any violence, threats, promises, or other improper influence." *Johnson,* 584 N.E.2d at 1099 (citations omitted). When Horan, subsequent to making the statement at issue here, requested an attorney, all questioning ceased.

■ While Horan contended that "there must be some action or indication by the defendant that he is willing to waive his rights in addition to simply answering further police initiated questioning," an express written or oral waiver is not necessary to establish that the defendant waived his *Miranda* rights. *Cook v. State,* 544 N.E.2d 1359, 1363 (Ind.1989). Here, where Horan was fully informed of his Miranda rights, indicated he understood those rights, answered the police question in the absence of any evidence of coercion or improper inducement, and was not questioned further upon requesting an attorney, we conclude that the trial court did not abuse its discretion in denying the defense motion to suppress.

## IV

■ Horan next contends that the trial court committed reversible error by admitting as substantive evidence portions of witness Robert Hendricks's pre-trial statement to police.

As discussed under *Background, supra,* Hendricks had been with Bennett at the outset of the evening's events that ended in Bennett's death and had joined Bennett in riding around with Horan and the Owens brothers. The State called Hendricks as its witness and questioned him extensively on the evening's events and Horan's role in them. The prosecutor also elicited from Hendricks that the State had furnished Hendricks with lodging, food, and transportation in connection with his trial testimony. After cross-examination, re-direct, and re-cross, the trial proceeded with other witnesses.

Later, as its final witness in its case-in-chief, the State recalled Hendricks and sought to introduce into evidence the transcript of Hendricks's interview shortly after Bennett's death with Indiana State Police officer Jon Oldham.[9] After defense objection and a hearing outside the presence of the jury, the trial court prohibited introduction of the transcript but did permit the State to question Hendricks as to his answers to Oldham's questioning, thereby effectively admitting Hendricks's prior statements.

Horan now renews his contention that these statements were inadmissible hearsay as they were statements made by Hendricks other than while testifying at the trial and were offered in evidence to provide the truth of the matters asserted, *to wit,* the evening's events and Horan's involvement in them. *See* Evid.R. 801(c). The State responds, as it did at trial, that the statements were not hearsay because Hendricks testified at trial and was subject to cross-examination and the statements were consistent with Hendricks's testimony and were offered to rebut an implied charge against Hendricks of recent fabrication or improper influence or motive, and made before the motive to fabricate arose. Evid.R. 801(d)(1)(B). Horan replies that he made no such implied charge.

During Horan's cross-examination of Hendricks, the following colloquy occurred:

Q. How much money do you think the Prosecutor spent on you as a witness?

A. I have no idea.

---

9. *Compare Owens,* 659 N.E.2d at 477, where in the first trial the State put Trooper Oldham on the stand to bolster Hendricks's testimony.

Q. Is that something you reported to the IRS as income?

A. No.

Q. Paid some of your bills a few years ago and again this time?

A. Yes.

R. 2233. On Horan's re-cross of Hendricks, the following colloquy occurred:

Q. Okay. When you say you had no deals with the Prosecutor, that means you don't have any deal on any pending cases?

A. No.

Q. But he's, but he's givin' you money?

A. They have to put me up somewhere. . . .

Q. So what all did they, what all did they pay for?

A. Motel rooms and meals.

Q. For how many days?

A. Uh, one day, two, three days in a motel and three days' meals.

Q. Didn't you say just a little bit ago it was two, two nights in a motel?

A. Well, this time it's two nights. I was down here last time I stayed in a motel one night.

R. 2295–96.

Horan denies that his line of questioning implied that Hendricks recently fabricated his testimony and that his line of questioning remained within the bounds of the State's direct examination. He argues instead that the State first "injected the topic of the State paying for Hendricks' food, lodging and transportation on direct examination," permitting him to explore further the topic of State funding of a witness without implying that Hendricks recently fabricated his story. Appellant's Br. 49. Horan relies on Judge Miller's analysis that a "party calling the declarant as a witness cannot trigger its own right to present prior consistent statements; the opponent must take some line of attack that implies a motive to fabricate." 13B Robert Lowell Miller, *Courtroom Handbook on Indiana Evidence*, Rule 801, 237 (1996–97 ed.), citing *United States v. Brennan*, 798 F.2d 581, 588 (2d Cir.1986). Horan asserts that the State's direct examination of Hen-

dricks "triggered" the use of a prior consistent statement, which, according to Judge Miller, is impermissible pursuant to Evid.R. 801(d)(1).

■ A ruling on the admissibility of arguably hearsay statements is within the sound discretion of the trial court. *Jones*, 655 N.E.2d at 56; *Taylor v. State*, 587 N.E.2d 1293, 1302 (Ind.1992). We believe the trial court might have found Horan's line of questioning to suggest that the State was providing something more than just lodging, food, and travel in connection with trial—suggesting that "money . . . the Prosecutor spent on [Hendricks] as a witness," money which Hendricks used to pay "some of [his] bills" past and present, constituted personal income to Hendricks for federal income tax purposes. It was within the trial court's discretion to conclude that this line of questioning at least *implicitly* charged Hendricks with a motive to fabricate his testimony. In this regard, we conclude that the fact that the State first introduced testimony that it paid for Hendricks's accommodations does not preclude the State from responding to an implied charge of recent fabrication alleged during cross-examination. *Brennan*, 798 F.2d at 588–89 (the fact that the witness previously lied to the grand jury, "does not prevent the government from responding to *appellant's* impeachment of [the witness], and that is especially true where, as here, the trial judge found that impeachment left the jury with a significant misimpression.").

Relying on federal case law, Horan makes a related argument based upon his characterization that his line of questioning only minimally impeached Hendricks without implying a recent fabrication or improper motive. "To require a trial judge to admit all records purporting to be 'prior consistent statements' when a party minimally impeaches a witness and when there is no clear charge of recent fabrication would undermine the very purpose of excluding prior consistent statements." *Christmas v. Sanders*, 759 F.2d 1284, 1288–89 (7th Cir.1985).

■ However, "[t]he issue is the extent to which questions which impeach a witness for lack of credibility also imply a charge of

recent fabrication." *Thomas v. U.S.*, 41 F.3d 1109, 1119 (7th Cir.1994). The trial court concluded in its sound discretion that Horan's line of questioning crossed the line from impeachment for credibility into the realm of implicitly charging Hendricks with fabricating his testimony. Horan maintains that he did not intend to imply that Hendricks recently fabricated his testimony. However, "[t]he fact that . . . counsel may not have intended to imply that [the witness's] story was fabricated . . . is irrelevant if that inference fairly arises from the line of questioning he pursued." *U.S. v. Baron*, 602 F.2d 1248, 1253 (7th Cir.1979). Once an implied charge of recent fabrication is made, the adversary is entitled to present a prior consistent testimony as substantive evidence. *Owens v. State*, 659 N.E.2d 466, 477 (Ind.1995). Once again it is within the trial court's discretion to decide the extent to which prior statements are admissible and we see no abuse of that discretion here.

### V

Horan next contends that there was insufficient evidence to prove beyond a reasonable doubt that he "knowingly" committed the Murder. When reviewing a claim of insufficient evidence to support a conviction, we neither re-weigh the evidence nor judge the credibility of the witnesses. We only consider the evidence most favorable to the conviction and any reasonable inferences that can be drawn from that evidence. *Owens v. State*, 659 N.E.2d at 474; *Vance v. State*, 640 N.E.2d 51, 57 (Ind.1994). A conviction will be affirmed if there was substantial evidence of probative value whereby a trier of fact could have concluded that the defendant was guilty.[10] *Owens*, 659 N.E.2d at 474 (*citing Woods v. State*, 274 Ind. 624, 413 N.E.2d 572, 577 (1980)).

Horan contends that the State failed to prove that he "knowingly" murdered Bennett because he did not know that the beatings inflicted upon Bennett would result in his death. Horan concedes that he only intend-

ed to beat Bennett. However, Horan, along with Owens, repeatedly hit and kicked Bennett until he fell to the ground. They then slammed Bennett's head against the car several times before leaving Bennett at Devil's Elbow. Both Horan and Owens returned to Devil's Elbow to continue beating Bennett only to leave him there for a second time. In *Owens*, we concluded that given the "severity of the beating" inflicted upon Bennett, a jury could have reasonably inferred that "Owens knowingly killed Bennett and did not just intend to beat him." *Owens*, 659 N.E.2d at 473. Similarly, given the severity of the beatings, the jury could have reasonably found beyond a reasonable doubt that Horan knowingly killed Bennett.

### VI

Lastly, Horan contends that his convictions for both Murder and Battery subjected him to double jeopardy. Horan asserts that under the charging information, the State did not have to prove any facts in addition to those required to prove the Murder charge to convict Horan of Battery. We faced the same contention in *Owens* and resolved it in defendant's favor. *Owens*, 659 N.E.2d at 478. We do so here as well.

### Conclusion

We affirm Horan's conviction for Murder and vacate his conviction and sentence for Battery.

SHEPARD, C.J., and DICKSON, SELBY and BOEHM, JJ., concur.

---

10. Note that this standard differs from that applied to determine whether a lesser included offense instruction should be given. *See* part I, *supra*. Here we ask whether there was substantial evidence of probative value of a "knowing" killing from which the jury could have inferred guilt; in part I, we ask whether there was a serious evidentiary dispute of a "knowing" killing from which the jury could have concluded a lesser offense was committed but not murder.