James F. WRIGHT, Jr., Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 20S00–9808–CR–431.

Supreme Court of Indiana.

July 3, 2000.

R. Brent Zook, Goshen, Indiana, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Thomas D. Perkins, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

The appellant James Wright appeals from a conviction of murder and presents four issues of our review:

I. Whether the trial court properly instructed the jury about the State's burden of proof.

II. Whether the trial court correctly instructed the jury regarding the statutory intoxication defense.

III. Whether the trial court properly admitted several photographs of the victim.

IV. Whether the trial court properly admitted several hearsay statements.

In the early morning of May 31, 1997, Debra Damron went to the home of her mother, Barbara Marshall, and found Marshall dead, lying on her living room floor in a pool of blood, amid several knives. The cause of death was a stab wound to the neck, accompanied by strangulation. Marshall's body had a total of sixty-five incisional wounds.

At some point, investigation of the murder focused on James Wright, who was Marshall's neighbor. Wright then gave a statement to the police in which he admitted going to Marshall's home on May 31st. According to Wright, he went to her home to use the telephone because he was locked out of his own home. While he was using the phone, Marshall approached him with a knife. An altercation ensued, during which Wright stabbed Marshall, then fled. A search of Marshall's home uncovered two blood spots in the hallway near one of

the doors. The DNA contained in this blood matched that of Wright.

Wright was convicted of murder and sentenced to sixty-five years.

## I. Reasonable Doubt Instructions

Wright first contends that three of the jury instructions regarding reasonable doubt and the jury's duty were improper because they were mandatory in nature. (Appellant's Br. at 16.)

The thrust of Wright's claim is that the court's instructions impermissibly impinged upon the jury's role under Article I, section 19 of the Indiana Constitution, which states: "In all criminal cases whatever, the jury shall have the right to determine the law and the facts."

▪ The defense did not object to these instructions at trial. Failure to object to a jury instruction results in waiver on appeal, unless giving the instruction was fundamental error. *Brown v. State*, 691 N.E.2d 438, 444 (Ind.1998). Error is fundamental if it is "a substantial blatant violation of basic principles" and where, if not corrected, it would deny a defendant fundamental due process. *Id.*

Two of the instructions in question read in pertinent part as follows:

### Instruction 15

The State has the burden of proving that the defendant is guilty beyond a reasonable doubt.... Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.... If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you should find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you should give him the benefit of the doubt and find him not guilty.

(R. at 158, 727–28.)

### Instruction 21

I submit this case to you with the confidence that you will faithfully dis-

charge the grave duty resting upon you, bearing in mind that the liberty of the accused is not to be trifled away nor taken by careless or inconsiderate judgment; but if after a careful consideration of the law and the evidence in the case you are satisfied beyond a reasonable doubt that the defendant is guilty, you should return your verdict accordingly. Duty demands it and the law requires it.

(R. at 165, 733.)

▪ Instructions 15 and 21 do not violate Article I, section 19. The instructions inform the jurors that if they conclude beyond a reasonable doubt that the defendant is guilty, they should return a verdict of guilty. The instructions are hardly offensive to any of our fundamental precepts of criminal justice; indeed, we have approved of them in several previous cases. *See Barber v. State*, 715 N.E.2d 848, 851 (Ind.1999); *Winegeart v. State*, 665 N.E.2d 893, 895 (Ind.1996).

We now turn to the third instruction at issue, which read:

### Instruction 16

All the material allegations of the information must have been proved by the evidence beyond a reasonable doubt before you would be warranted in convicting the Defendant. If anyone [sic] of the material allegations has not been so proved, it would be your duty to acquit. If all the material allegations of the information have been so proved, it is your duty to convict the Defendant.

(R. at 159, 728–29.)

Our caselaw on similar instructions makes several distinctions.

▪ First, it is proper to tell the jury it "should" convict. Justice DeBruler outlined the rule in *Loftis v. State*, 256 Ind. 417, 419–20, 269 N.E.2d 746, 747 (1971):

The principle is established that a trial court may instruct the jury that if they find that all the material allegations of the indictment or affidavit are proven

beyond a reasonable doubt that they "should" convict the defendants. However, such an instruction would be erroneous where the court failed to set forth all the material allegations which the state must prove before a conviction can be obtained or where the court failed to instruct the jury that they were the judges of the law as well as the facts.

Second, as the *Loftis* court recognized, it is error to mandate that jurors return a guilty verdict upon a finding of certain specifically mentioned facts. In *Pritchard v. State,* 248 Ind. 566, 568, 230 N.E.2d 416, 417 (1967), the trial court instructed the jury as follows:

> The Court now instructs you that if you should find that [the defendant] . . . [was] guilty of cruelty or neglect of Kathy Jean Pritchard and that as a result of such cruelty or neglect beyond a reasonable doubt Kathy Jean Pritchard did sicken, languish and die, then you shall find such defendant guilty of involuntary manslaughter.

(emphasis omitted). We held this instruction impinged upon the role of jurors under our state Constitution. *Id.* at 576, 230 N.E.2d at 421.

■ Third, instructions that might be erroneous do not constitute grounds for reversal where no objection was lodged. Fundamental error does not occur, for example, even when the trial judge gives the jurors a relatively strong directive, so long as the court also tells them the elements of the offense and reminds them that they are the judges of both law and fact. *Barker v. State,* 440 N.E.2d 664 (Ind.1982) (no fundamental error where instructions told jury that it "must" convict if material elements were proven and that it was judge of both law and facts); *see also Taylor v. State,* 420 N.E.2d 1231 (Ind.1981) (no fundamental error to tell jury it "must find the Defendant guilty" if material allegations are proven beyond a reasonable doubt where no *"Pritchard* instruction" was given and instruction on jury as judge of law and facts was given).

■ The instructions here fit inside the holdings of *Barker* and *Taylor.* The trial court gave a final instruction on the elements of murder. (R. at 145.) It also instructed the jurors that they were the judges of both the law and the facts, and that they were to consider all the instructions as they relate to each other. (R. at 143, 162.) Any error was not fundamental.

## II. Voluntary Intoxication Instruction

Wright also asserts that the trial court wrongly instructed the jury about whether it could consider evidence of Wright's intoxication in assessing his *mens rea* as an element of the murder offense.

We have had other occasions to consider such a claim.

When Wright committed the offense in question, Ind.Code § 35–41–3–5(b) read: "Voluntary intoxication is a defense only to the extent that it negates an element of an offense referred to by the phrase with intent to or with an intention to." This Court held that statute void in *Terry v. State,* 465 N.E.2d 1085, 1088 (Ind.1984), saying the voluntary intoxication defense can be offered for any crime, regardless of the exact language used in defining the elements of the crime.

■ Even giving an instruction based on this voided statute, however, does not always require a new trial. In *Horan v. State,* 682 N.E.2d 502, 509 (Ind.1997), the trial court did precisely that, but the defendant did not object. Because none of the charged crimes contained the phrase "with intent to" or "with an intention to", the legal upshot of the erroneous instruction was that voluntary intoxication was not a defense available to Horan.

We affirmed the conviction anyway. As Justice Sullivan put it, when a defendant "was not entitled to a voluntary intoxication instruction in the first place, it could not have been fundamental error to give a

defective one." [1] *Id.*

■ A voluntary intoxication instruction is required only where " 'the evidence relevant to the defense, if believed, was such that it could have created a reasonable doubt in the jury's mind that the accused had acted with the requisite mental state.' " *Id.* (quoting *Van Cleave,* 674 N.E.2d at 1303). As Justice Boehm recently observed, establishing reasonable doubt through an intoxication instruction "is not an easy threshold to meet." *Van Cleave,* 674 N.E.2d at 1303. The author of *Terry,* Chief Justice Givan, thought it required showing the defendant was "completely *non compos mentis.*" *Sills v. State,* 463 N.E.2d 228, 242 (Ind.1984) (Givan, C.J., concurring).

■ The degree of intoxication is immaterial; rather, the issue is whether the accused was still able to form the *mens rea* required for the crime. *Van Cleave,* 674 N.E.2d at 1303. Evidence that shows a defendant could form the requisite *mens rea* includes proof such as his ability to " 'devise a plan, operate equipment, instruct the behavior of others, or carry out acts requiring physical skill.' " *Id.* (quot-

ing *Owens v. State,* 659 N.E.2d 466, 473 (Ind.1995)).[2]

■ After reviewing the record, we conclude that the evidence did not demonstrate that Wright was so intoxicated at the time the crime occurred as to prevent him from forming the requisite intent to murder. Several days after Barbara Marshall was murdered, Wright spoke with the police and gave them a statement regarding his activities on May 31, 1997. A review of Wright's statement reveals that he was able to give the police a comprehensive account of his activities, providing details substantiated by other witnesses.

For example, Wright told the police that, early in the evening, after he had consumed crack cocaine, he went to an ATM and withdrew cash, an operation that requires a fair level of consciousness. (R. at 565.) Officer Windbigler corroborated Wright on this score; he found an ATM receipt in Wright's sweatpants following a search of Wright's home. (R. at 590.) Later that evening, Wright's wife dropped him off at an apartment house so that he could purchase more drugs. (R. at 565.) When Wright returned home, he was locked out of his house, so he went next door to Marshall's home to use her phone.

---

1. The voluntary intoxication defense has "endured an unsteady evolution in Indiana law." *State v. Van Cleave,* 674 N.E.2d 1293, 1302 (Ind.1996), *modified on reh'g on other grounds,* 681 N.E.2d 181 (Ind.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1060, 140 L.Ed.2d 121 (1998).

 Before September 1, 1980, intoxication was a defense to any crime only to the extent it negated "specific intent." Ind.Code Ann. § 35-41-3-5(b) (West Supp.1979). In 1980, the legislature revised the statute to limit the voluntary intoxication defense only to those offenses specifically defined by use of the phrases "with intent to" or "with the intention to." Ind.Code Ann. § 35-41-3-5(b) (West 1986); *Van Cleave,* 674 N.E.2d at 1302. This Court strictly construed that amendment and applied the statute only to those crimes defined by those phrases until *Terry,* 465 N.E.2d 1085, wherein we declared the 1980 amendment "void and without effect," reasoning that the U.S. and Indiana Constitutions required voluntary intoxication as a de-

 fense to any crime. *Van Cleave,* 674 N.E.2d at 1302 (citing *Terry,* 465 N.E.2d at 1088). We subsequently held in *Pavey v. State,* 498 N.E.2d 1195, 1196 (Ind.1986), that *Terry* applied retroactively.

 In 1996, the U.S. Supreme Court held in *Montana v. Egelhoff,* 518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996), that the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution does not require states to make the voluntary intoxication defense available. Thus, *Terry* is no longer good law as it applies to the federal Constitution. This Court has not considered whether *Terry* still has precedential value under the Indiana Constitution, as the question has not yet been squarely before us. *See Van Cleave,* 674 N.E.2d at 1302-03 n. 15; *Horan,* 682 N.E.2d at 508 n. 5.

2. An instruction informing the jury that a defendant who can perform these acts should not be relieved of responsibility is error. *Dunlop v. State,* 724 N.E.2d 592, 594-95 (Ind. 2000).

(*Id.*) According to Wright, Marshall allowed him into her home and he used a phone that he accurately described as a "white push button phone." (*Id.; R.* at 646.)

Wright told the police that when he finished using the phone, Marshall was standing behind him holding a knife. A fight ensued, and Wright began stabbing Marshall, eventually using more than one knife to kill her. Police reports and photos confirm that more than one knife was used to stab Marshall. Realizing what he had done, Wright ran to the back door and tried to exit. Wright said he was unable to open the chain lock on the back door, so he went to the front door and left through it. The fact of there being a chain lock on the back door is also confirmed by police reports and photos.

Wright was also able to recall the events occurring after the crime. In his statement, Wright told the police that, after leaving Marshall's house, he went to a crackhouse to purchase drugs. Several witnesses confirmed Wright's presence at the crackhouse. While there, someone told Wright that he had blood on his face, so Wright requested some water and washed his face. Finally, Wright walked home. Still locked out, he entered his home by climbing through a window. He then changed his clothes and washed his face and hands.

Wright pursued three defenses. First, he contended he was not the perpetrator at all. Second, he argued that if he was the perpetrator, he acted in self-defense. Third, he claimed he was too drugged to possess intent.

Although Wright claims he was unable to form the requisite intent to commit murder due to his drug use during the night before and the morning of Marshall's murder, the only evidence tending to establish lack of intent is Wright's own insistence that his memory of the events was like a "dream or vision." (Appellant's Br. at 11.) Still, Wright was able to recall accurately the events of May 31st, and acted in a lucid and rational manner following the crime. Despite his alleged intoxication, Wright was alert enough to walk home, climb through a window, and wash the blood off of his hands and face.

Based on the foregoing, even if Wright did consume drugs on May 31st, the evidence "relevant to the defense of voluntary intoxication ... even if believed, was not such that it could have created a reasonable doubt in the jury's mind as to whether" Wright knowingly killed Marshall. *See Horan*, 682 N.E.2d at 509.

■ As in *Horan*, the court erroneously instructed the jury.[3] Because Wright

3. The instruction in Wright's trial, to which he did not object, reads as follows:

You are instructed that at the time of the commission of the offense herein, there was in full force and effect a Statute in the State of Indiana reading as follows, to-wit:

(a) "35–41–2–5. Intoxication not a defense.

Intoxication is not a defense in a prosecution for an offense and may not be taken into consideration in determining the existence of a mental state that is an element of the offense unless the defendant meets the requirements of IC 35–41–3–5."

(b) "35–41–3–5. Intoxication.

It is a defense that a person who engaged in the prohibited conduct did so while he was intoxicated, only if the intoxication resulted from the introduction of a substance into his body:

(1) Without his consent; or
(2) When he did not know that the substance might cause intoxication."
(R. at 150.)

Relying on this Court's opinion in *Terry*, 465 N.E.2d 1085, Wright argues that the trial court erred in giving the jury this instruction because the statutes on which it is based violate the Indiana Constitution. Wright concedes that the statutes are not unconstitutional under the United States Constitution. *See Montana v. Egelhoff*, 518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed.2d 361.

Although both sides agree that these statutes apply in the instant case, we note that Ind.Code § 35–41–2–5 became effective on July 1, 1997, while Wright was charged with a murder that occurred on or about May 31, 1997. Therefore, Ind.Code § 35–41–2–5 does not apply to this case. Accordingly, we need not address the precedential value of *Terry*,

was not entitled to an intoxication instruction this error does not provide grounds for reversal.

### III. Photographs of the Victim's Body

Numerous photographs were admitted at trial depicting Barbara Marshall's body at the scene of the crime and during autopsy. Wright objected to their admission on grounds that their gruesome nature outweighed their probative value and that they were cumulative. (Appellant's Br. at 19.) The trial court overruled the objections and admitted the photographs.

■■■ To exclude photographs from evidence on relevancy grounds, Wright must show that their improper influence on the jury outweighed their probative value to the extent that they were unduly prejudicial. *Harrison v. State,* 699 N.E.2d 645, 647 (Ind.1998). Photographs depicting the victim's injuries or demonstrating a witness's testimony are generally admissible and will not be rejected merely because they are gruesome or cumulative. *Id.* To exclude photographs because they are cumulative, Wright must show that the probative value is substantially outweighed by the needless presentation of cumulative evidence. *Id.* at 648. We review the trial court's ruling for an abuse of discretion. *Id.*

■■ Of the photographs at issue, two depict Marshall's body on the floor, where it was found. One shows only her head; another shows her entire body. These photos show her body in relation to the door and hallway. They also demonstrate that several knives were found near her body. Exhibits 32–45 are a catalogue of the numerous stab wounds inflicted upon the victim. One photo shows a complete overview of the victim's torso, while two others are close-ups of her face and neck, and the corresponding incisions. The remaining ten photographs are close-up

shots of the victim's stab wounds, including photographs of her hands, arms, and scalp.

The photographs at issue establish the cause of death and the manner in which the crime was committed. This evidence was particularly probative inasmuch as Wright attempted to establish that he was not the perpetrator and, in the alternative, that the killing was "without deliberation, in response to being confronted by a woman with a knife" while Wright was in a deeply intoxicated state. (Appellant's Br. at 12.) The photographs are also probative in light of Wright's testimony at trial that he did not remember stabbing Barbara Marshall.

The photographs are not particularly gruesome and show the wounds as the coroner found them, without alteration. Each photo shows a different view of the crime scene or the victim's injuries. These photographs were not needlessly cumulative and were not introduced solely for the purpose of inflaming the jurors' emotions. We do not see an abuse of discretion by the trial court.

### IV. This Hearsay Confirmed Other Evidence

Finally, Wright asserts that the trial court erred in permitting Officer Windbigler to testify about statements made by Tony Holiday, Nickolis Wilson, and an unidentified person. Wright argues that these statements are inadmissible hearsay under Indiana Evidence Rule 802.

Windbigler testified during his direct examination that he conducted an investigation of the places where Wright had been on May 30th and 31st. One of the places was a known crackhouse. Windbigler took statements from several people who observed Wright at the crackhouse. On cross-examination, Wright's attorney asked Windbigler about the investigation, and the following colloquy occurred:

Q. Did you —— to your knowledge, did anybody go to the crack houses?

465 N.E.2d 1085, as it applies to the state constitutional implications of our legislature's

decision to abolish the voluntary intoxication defense.

A. Yes, sir.

Q. Were there any statements taken from those people?

A. Sure.

Q. You've seen them?

A. Yes, sir. I believe they are in the case.

Q. Did those persons who were interrogated say that Jim [Wright] had been there?

A. Somebody had remembered seeing him with blood on him. Something to that effect. I remember that statement.

Q. But you weren't involved in that part?

A. I believe somebody else took the statement. What we did is we knocked on doors of allegedly these places where he was at. I know we found one or two people or maybe three who said, yeah, he stopped and they had gotten money with blood on it. He had blood on his shirt; those type things.

(R. at 587.)

On redirect, the State attempted to introduce three written witness statements, the statements of Tony Holiday, Nickolis Wilson, and one unidentified person. The defendant objected to the introduction of these statements as inadmissible hearsay, and the trial court sustained the objection. The State then resumed Windbigler's redirect, asking him what the witnesses said. Windbigler testified that one witness said she had observed Wright arriving at the crackhouse with blood on his face and clothing. She also said that Wright asked for some water and washed his face. Windbigler said that another witness told him that Wright bought some crack cocaine and paid for it with money partially covered in blood. The defense objected to these statements as inadmissible hearsay, and the trial court overruled the objection.

 Although the defense objected to and now complains of the admission of the hearsay statements on redirect, no objection was made to the testimony about the statements on cross examination. Indeed, the defense first injected the issue of the witness statements into the trial. Reversal may not be predicated upon the erroneous admission of evidence when evidence having the same probative effect is admitted without objection or without contradiction. *Bobbitt v. State*, 266 Ind. 164, 361 N.E.2d 1193 (1977). The statements made on redirect are about the same as those elicited by the defense during cross-examination. We find no reversible error.

### Conclusion

Accordingly, we affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.