Bradley D. MORGAN, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 34S00–0006–CR–350.

Supreme Court of Indiana.

Oct. 5, 2001.

Steven C. Litz, Monrovia, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Bradley Morgan was convicted of murder for shooting Billy Wiley to death at a party. Defendant has shown neither the deficient performance nor prejudice necessary to sustain his claims that his trial lawyer was ineffective. His claim that the trial court improperly instructed the jury is not available for our review. And it was within the court's discretion to allow an expert's opinion of certain details of the crime. For these reasons, we affirm.

*Background*

The facts most favorable to the judgment indicate that on the evening of January 16, 2000, Defendant and Billy Wiley were at a party in Kokomo and got into a minor argument where one or both of them pushed the other. Defendant told Wiley, "I'm going to get you, I'm going to get you for this." Defendant then walked out of the party. About twenty minutes later, Defendant returned; he walked out of the bathroom with a gun in his hand and approached Wiley. Another person at the party stepped between the two, but Defendant fired a shot at Wiley. Defendant and Wiley struggled with each other and Defendant fired two more shots in rapid succession and Wiley fell onto Defendant.

Wiley died as a result of a gunshot wound to the head. Defendant was bleeding from a gunshot wound to his hand. Defendant then fled from the party to the house of his mother who drove him to St. Vincent's Hospital in Indianapolis. Defendant initially told the hospital personnel that he had fallen on some glass, but the hospital staff found fragments in his hand and called the police. When a police officer arrived, Defendant and his mother told him that one of Defendant's friends had accidentally shot him at an Indianapolis apartment complex. Defendant was charged and convicted of Murder,[1] and Defendant was sentenced to 60 years incarceration.

I

■ Defendant contends that he was denied his constitutional right to the effective assistance of counsel.[2] He argues that "his attorney failed to object to a mandatory jury instruction; failed to object to hearsay testimony; failed to object to the prosecutors' statement that [Defendant] could have come forward and spoken to the police; and failed to tender an instruction on voluntary manslaughter." Appellant's Br. at 4.

■ To establish a valid ineffective assistance of counsel claim, Defendant must show, first, that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and, second, that "there is a reasonable probability that, but for counsel's

1. Ind.Code § 35–42–1–1 (1998).

2. Defendant has raised his claims of ineffective assistance of counsel in this direct appeal. "[A] postconviction hearing is normally the preferred forum to adjudicate an ineffectiveness claim," *Woods v. State,* 701 N.E.2d 1208, 1219 (Ind.1998), *cert. denied,* 528 U.S. 861, 120 S.Ct. 150, 145 L.Ed.2d 128. (In the exceptional case, a *Davis* proceeding provides an alternative forum.) *Id.* at 1219–20 (citing

*Davis v. State,* 267 Ind. 152, 368 N.E.2d 1149 (1977).) We have held that raising claims of ineffective assistance of counsel on direct appeal precludes their review in subsequent post-conviction proceedings. *See Allen v. State,* 749 N.E.2d 1158, 1166 (Ind.2001) (*citing Sawyer v. State,* 679 N.E.2d 1328, 1329 (Ind.1997); *Morris v. State,* 466 N.E.2d 13, 14 (Ind.1984)).

unprofessional errors, the result of the proceeding would have been different." *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Lambert v. State,* 743 N.E.2d 719, 730 (Ind.2001).

■ We have stated in past cases that the first prong of the *Strickland* test affords counsel "considerable discretion in choosing strategy and tactics, and we will accord that decision deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Lambert,* 743 N.E.2d at 730 (quoting *State v. Holmes,* 728 N.E.2d 164, 172 (Ind.2000)). Regarding the second prong of the *Strickland* test, "[a] reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id.*

### A

■ Defendant argues that counsel was ineffective for failing to object to two jury instructions.

Final instruction no. 3 read in pertinent part: "If the state did prove each of these elements beyond a reasonable doubt, you *should* find the defendant guilty of murder." (emphasis added). Final instruction no. 16 provided:

> If, after considering all of the evidence, you have reached a firm belief in the guilt of the defendant that you feel safe to act upon that belief, without hesitation, in a matter of the highest concern and importance to you, then you *will* have reached that degree of certainty which excludes reasonable doubt and authorizes conviction.

(R. at 142.) (emphasis added).

Defendant argues that the emphasized language of these two instructions conflicts with the trial court's initial instruction that the jury was the judge of the law and the facts under Art. 1, § 19, of the Indiana Constitution. Specifically, Defendant argues that the trial court's use of the words "should" and "will" in the contested instructions was improper. He stated that "the jury was told how to think and act. In the first instance, the trial court told the jury what it ought to do, and in the second, it told them at what point it ought to do it." Appellant's Br. at 6.

We have held in a variety of contexts that Art. I, § 19, is not violated when the types of instructions given in this case are accompanied by an instruction informing the jury that it is the judge of the law and the facts. *See, e.g., Parker v. State,* 698 N.E.2d 737, 742 (Ind.1998); *Loftis v. State,* 256 Ind. 417, 420, 269 N.E.2d 746, 747–8 (1971); *Mitchem v. State,* 503 N.E.2d 889, 891 (Ind.1987). Defendant acknowledges that a law and the facts instruction was given here.

As to instruction no. 3, we recently reiterated that a trial court may use the word "should" in such a manner. *See Wright v. State,* 730 N.E.2d 713, 716 (Ind.2000). In *Wright,* this court found a similar instruction to be "instructive, and hardly offensive to any of our fundamental precepts of criminal justice." *Id.* We stated, "A trial court may instruct the jury that if they find that all the material allegations of the indictment or affidavit are proven beyond a reasonable doubt that they 'should' convict the defendants." *Id.* at 716–17 (Ind. 2000) (quoting *Loftis,* 256 Ind. at 419–20, 269 N.E.2d at 747).

As to instruction no. 16, we have indicated that the use of the analogy about what would cause one to act without hesitation on a matter of highest personal concern and importance is neither required nor particularly desirable in explaining the concept of reasonable doubt. *Winegeart v. State,* 665 N.E.2d 893, 902 (Ind.1996). But

we have not disapproved its use. Nor have we questioned it as a violation of Art. I, § 19—the claim Defendant asserts here.

■ The foregoing analysis demonstrates that instructions no. 3 and no. 16 comported with the requirements Art. I, § 19. As such, we conclude that it was within the range of reasonable attorney behavior not to object to these instructions. And because we assume competence on the part of a lawyer at trial, an action or omission that is within the range of reasonable attorney behavior can only support a claim of ineffective assistance if that presumption is overcome by specific evidence as to the performance of the particular lawyer. *Woods v. State*, 701 N.E.2d 1208, 1212 (Ind.1998). No such evidence has been offered here.

### B

■ Defendant argues that counsel was ineffective for failing to object to hearsay testimony.

At trial, a security guard from St. Vincent's Hospital testified that Mrs. Morgan had given him a false account of how Defendant sustained the wound to his hand. Defendant argues that the guard's testimony was improper hearsay evidence,[3] and should have been objected to. Defendant argues that counsel was ineffective for failing to object.

We do not find a valid ineffective assistance of counsel claim here because the prejudice prong of *Strickland* is not satisfied. The testimony of the guard was cumulative of the admissible testimony of other witnesses. Defendant's mother herself testified at trial that she had told the security guard a false story. And another

witness, Deputy Salluom, testified that Defendant himself had told him the same story. Because of the cumulative nature of the hearsay testimony at issue here, we see no basis for concluding that its exclusion would have produced a different result.

### C

■ Defendant argues that trial counsel was ineffective for failing to object to the prosecutor's closing argument. Appellant's Br. at 7. In his closing argument, the prosecutor stated:

> Well, after that, as [Defendant's trial counsel] well knows, and you're represented by an attorney, the police can't go and speak to you. If Bradley Morgan wanted to provide his version of these events to the police all he had to do was tell Mr. Ryan, 'Pick up the phone, call the detectives, set up an appointment for me to give a statement.' That's all that had to be done.

(R. at 1460.)

■ A person in custody who is questioned by the police has the right to remain silent, *Miranda v. Arizona*, 384 U.S. 436, 445, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and, in general, a criminal defendant may not be penalized at trial for invoking the right to remain silent. *See Doyle v. Ohio*, 426 U.S. 610, 620, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). Using a defendant's post-*Miranda* silence to impeach a defendant at trial violates the Due Process Clause of the Fourteenth Amendment. *See Doyle*, 426 U.S. at 619, 96 S.Ct. 2240;[4] *Miranda*, 384 U.S. at 445, 86 S.Ct. 1602.

---

3. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *See* Ind.

Evidence Rule 801(c). Hearsay is generally not admissible. *See* Ind. Evidence Rule 802.

4. "The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested

■ Although evidence of a defendant's post-*Miranda* silence is generally not admissible, the defendant may open the door to its admission. The *Doyle* Court acknowledged this in its decision, stating "[I]t goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest." *Doyle,* 426 U.S. at 619, 96 S.Ct. 2240. As we explained in *Willsey v. State*:

> [T]he central constitutional inquiry is the 'particular use to which the post-arrest silence is being put. .... *Doyle* does not impose a prima facie bar against any mention whatsoever of a defendant's right to request counsel, but instead guards against the exploitation of that constitutional right by the prosecutor.'

698 N.E.2d 784, 793 (Ind.1998) (quoting *Lindgren v. Lane,* 925 F.2d 198, 202 (7th Cir.1991)).

■ It follows that the prosecutor may comment on a defendant's post-*Miranda* silence in limited circumstances as long as it is not used to exploit a defendant's constitutional rights. *See Vitek v. State,* 750 N.E.2d 346, 350 (Ind.2001). We find that this case falls within those limited circumstances. During Defendant's case in chief, he testified that when he went to the police station the police never asked him for his version of events. During closing argument, defense counsel reiterated this: "Rev. Woodard picks up Bradley and they go to the police department. Bradley indicates no one asked him at the time what was his version. No one asked him to give a statement .... no one asked him at the station what his version was...."

Defendant's testimony and closing argument could reasonably have been understood to suggest to the jury that the police were not interested in hearing Defendant's version of events. The prosecutor's statement was in response to Defendant's testimony and closing argument. Defendant's own statements and his closing argument opened the door to the prosecutor's comments. There was no *Doyle* violation and Defendant's counsel was therefore not ineffective for not objecting.

## D

■ Defendant argues that his counsel was ineffective for failing to tender an instruction on voluntary manslaughter. Instruction no. 3 defined murder and also instructed the jury that they could find Defendant guilty of the lesser-included offense of reckless homicide. (R. at 126.) Defendant argues that his counsel should have tendered an instruction for voluntary manslaughter. The record suggests that counsel's omission of such an instruction may have been strategic.

Defendant's justification for the shooting was that he acted in self-defense by striking Wiley in the head with a gun and that the gun discharged. Then, according to Defendant's testimony, the gun discharged accidentally a second and third time as he and Wiley fell to the ground. He argues that at the time of the final confrontation, Wiley grabbed him while his hands were in his pockets and that Defendant took his hands out of his pockets and started hitting him. Defendant testified that he didn't know at the time that the weapon was in his hand and he maintained that he never intentionally shot Wiley. In fact, Defendant testified that he was not even

---

person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony." *Lynch v. State,* 632 N.E.2d 341, 342 (1994).

angry at Wiley after their first confrontation.[5]

A voluntary manslaughter instruction would likely have conflicted with this theory of the case. A person commits voluntary manslaughter by knowingly or intentionally killing another human being "while acting under sudden heat." Ind.Code § 35–42–1–3. Defendant's defense was that he didn't intentionally kill Wiley. It would have been a reasonable strategic decision for defense counsel to conclude that a voluntary manslaughter instruction would have been inconsistent with Defendant's testimony, which invoked a self-defense argument and adamantly insisted that there was no intent. As discussed *supra,* because we assume competence on the part of a lawyer at trial, an action or omission that is within the range of reasonable attorney behavior can only support a claim of ineffective assistance if that presumption is overcome by specific evidence as to the performance of the particular lawyer. *Woods,* 701 N.E.2d at 1212. Again, such evidence has been offered in respect of this claim.

## II

■ Defendant contends that the trial court committed reversible error by improperly instructing the jury on Defendant's intent. Appellant's Br. at 12. Over Defendant's objection, the court accepted the following instruction that was tendered by the state: "The intent to kill can be found from the acts, declarations, and conduct of the Defendant at or just prior to the commission of the offense, from the character of the weapon used, and from the part of the body on which the wound was inflicted."

Defendant objected, stating:

[T]he court should instruct the [j]ury as to the proper way to address inferences in one fashion or another, that being that if there are two inferences, one consistent with guilt and one consistent with innocence, the [j]ury would be required and should be instructed that they should accept the inference that is consistent with innocence.

(R. at 1383.)

Defendant now argues on appeal that the instruction was improper because it invaded the province of the jury. Appellant's Br. at 12. *See Turner v. State,* 258 Ind. 267, 280 N.E.2d 621 (1972). Defendant, citing *Wilson v. State,* 635 N.E.2d 1109 (Ind.Ct.App.1994), also claims, *incorrectly,* that the Court of Appeals deemed the above instruction to be "imperfect."[6]

---

5. Defendant stated that he did not know that his gun was in his coat pocket. He testified that he swung at Wiley in self-defense but didn't know that the gun was in his hand.

The following exchange regarding Defendant's state of mind took place during cross examination:

[Prosecutor]: Isn't it true, [Defendant], that [Wiley] pissed you off when he pushed you?
[Defendant]: No, sir.
[Prosecutor]: You weren't pissed off?
[Defendant]: No, sir.
(R. at 1350–51.)

6. In *Wilson v. State,* the court of appeals considered the above instruction in conjunction with another instruction regarding attempted murder. The trial court in *Wilson*

had instructed the jury that attempted murder required *knowing* or *intentionally* engaging in conduct that constituted a substantial step toward killing another person. The Court of Appeals concluded that the instructions regarding intent taken together were "imperfect" because attempted murder requires specific intent; a person may be convicted of murder for knowingly or intentionally killing, but attempted murder requires intent to kill. *See Wilson,* at 1113. The Court of Appeals did not indicate that the instruction standing alone was imperfect. *Wilson,* at 1115. Furthermore, in *Taylor v. State,* we stated that a similar instruction correctly stated the law in Indiana. 260 Ind. 264, 280, 295 N.E.2d 600, 610 (1973).

Defendant's argument on appeal is different than his argument at trial, and his objection is therefore waived. *See Small v. State*, 736 N.E.2d 742, 747 (Ind.2000) ("A defendant may not raise one ground for objection at trial and argue a different ground on appeal."); *Lehman v. State*, 730 N.E.2d 701, 703 (Ind.2000) ("When ... a defendant presents one argument at trial and a different argument on appeal, the claims are forfeited.").

### III

■ Defendant next contends that the trial court erred in allowing the pathologist to provide expert testimony on ballistics. Appellant's Br. at 10.

At trial, Dr. Hawley, a forensic pathologist, testified regarding the position that Defendant and the victim were in when the gun discharged. Dr. Hawley testified that he was a forensic pathologist with nearly 20 years of experience. In his field, he "[examines] the human body after death through the surgical performance of an autopsy to determine the cause and the manner of death and [he is] particularly interested in cases where death has been sudden, unusual, unexpected, and ... violent."

Defendant objected to Dr. Hawley providing a "scenario" in which both wounds were inflicted. The trial court sustained the objection, but allowed Dr. Hawley to testify regarding the relative positions that he believed Wiley and Defendant were in when the shots were fired.

Dr. Hawley testified that he determined that Wiley died of a gunshot wound to the head. The entrance wound was located on the left side of Wiley's head, and the gunshot tracked across Wiley's head from left to right before exiting the right side of Wiley's head. The nature of the wounds indicated to Dr. Hawley that the muzzle of the gun was against Wiley's head when it

was discharged. Dr. Hawley also testified that he believed that Defendant was shot through the hand, with the bullet entering the back of the hand and exiting through the outside edge of the hand. Given the circumstances of the wounds and the fact that witnesses indicated that the shots were fired in rapid succession, Dr. Hawley gave his opinion as to the relative position of Defendant and Wiley:

[Prosecutor]: And for the shot which entered Mr. Wiley's skull, in your opinion what would be the relative positions of the bodies of Mr. Morgan and Mr. Wiley?

[Dr. Hawley]: Well, the weapon is actually touching the skin of the side of the head on the left side which places, in your hypothetical presentation, the shooter's right hand at the top of the victim's left shoulder with the gun up against the left side of the victim's head.

[Prosecutor]: How about the second or the additional shot when Mr. Morgan's injuries was [sic] sustained?

[Dr. Hawley]: For the injury the shooter's left hand must be palm down, very close to the muzzle of the gun at the time the shot is fired and no more than a few inches from the barrel of the gun.

(R. at 1035.)

■ Generally, an expert's opinion is admissible if the expert's scientific, technical, or other specialized knowledge assists the trier of fact in understanding the evidence. Ind. Evidence Rule 702(a). Decisions regarding the admissibility of expert testimony are within the broad discretion of the trial court. *See Williams v. State*, 706 N.E.2d 149, 163 (Ind.1999). We will only reverse the trial court's judgment upon a showing of abuse of discretion. *Id.*

We find that the trial court did not abuse its discretion by allowing Dr. Hawley to testify regarding the relative posi-

tions of Defendant and Wiley at the time of the shooting. Dr. Hawley's conclusions were based on his expert analysis of the trajectory and location of the wounds. While providing a scenario or narrative would have pushed the limits of admissibility, it was within the trial court's discretion to allow Dr. Hawley, based on his examination, to offer an opinion of how the wounds were inflicted.

### Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.