**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**JAMES C. SPENCER**
**THOMAS M. DATTILO**
Dattilo Law Office
Madison, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEREMY L. HONAKER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 39A01-1306-PC-291 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JEFFERSON SUPERIOR COURT
The Honorable Alison T. Frazier, Judge
Cause Nos. 39D01-0603-FD-369, 39D01-0612-FD-1450,
39D01-0701-FD-29, 39D01-0701-FD-30

**May 28, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Jeremy L. Honaker appeals the post-conviction court's denial of his petition for post-conviction relief. Honaker raises one issue which we revise and restate as whether the court erred in denying his petition for post-conviction relief. We affirm.

FACTS AND PROCEDURAL HISTORY

In March 2006, the State charged Honaker under cause number 39D01-0603-FD-369 ("Cause No. 369") with Count I, maintaining a common nuisance as a class D felony; Count II, invasion of privacy as a class A misdemeanor; and Count III, domestic battery as a class A misdemeanor.

In December 2006, the State charged Honaker under cause number 39D01-0612-FD-1450 ("Cause No. 1450") with Count I, possession/use of legend drug/precursor as a class D felony; Count II, possession of cocaine as a class D felony; Count III, possession of a controlled substance as a class D felony; Count IV, possession of marijuana as a class A misdemeanor; and Count V, public intoxication as a class B misdemeanor.

In January 2007, the State charged Honaker under cause number 39D01-0701-FD-29 ("Cause No. 29") with theft as a class D felony. Specifically, the State alleged that Honaker exerted unauthorized control over Ernest Waggoner's 357 revolver. That same month, the State charged Honaker under cause number 39D01-0701-FD-30 ("Cause No. 30") with theft as a class D felony for exerting unauthorized control over Barbara Yount's rifles.

In each of the four cases, the trial court appointed attorney Jeffrey A. Flores to represent Honaker. On February 20, 2007, Honaker signed a plea agreement relating to all four cases. The plea agreement indicated that Honaker agreed to plead guilty to

2

domestic battery as a class A misdemeanor under Cause No. 369, possession of cocaine as a class D felony under Cause No. 1450, theft as a class D felony under Cause No. 29, and theft as a class D felony under Cause No. 30. The plea agreement provided that Honaker would receive a sentence of one year on his conviction for domestic battery as a class A misdemeanor, two years suspended for possession of cocaine, two years with one year suspended for theft under Cause No. 29, and two years with one year suspended for theft under Cause No. 30. The agreement stated that the sentence for domestic battery would run consecutive to the sentence for possession and consecutive to the theft sentence under Cause No. 29, and that all sentences would run concurrent with the sentence for Cause No. 30. In other words, the agreement called for a total sentence of five years with three years suspended.

On March 21, 2007, the court held a guilty plea hearing in all four cases. The parties tendered a document titled Plea Agreement which the court referred to as the amended plea agreement. The amended agreement indicated that Honaker agreed to plead guilty to theft as a class D felony under Cause No. 29, theft as a class D felony under Cause No. 30, possession of cocaine as a class D felony under Cause No. 1450, and domestic battery as a class A misdemeanor under Cause No. 369. The amended agreement stated that Honaker would be sentenced to "2 years on [Cause No. 29] concurrent with 2 years on [Cause No. 30], consecutive with 2 years on [Cause No. 1450], consecutive with 1 year on [Cause No. 369]; Execute the 2 years on the [Cause No. 1450] ('poss. Cocaine')." State's Exhibit No. 1 at 5. Honaker signed the amended agreement.

3

At the beginning of the hearing, the court asked Honaker whether he understood the amended plea agreement, and Honaker replied: "Yes." Defendant's Exhibit D at 4. The court then reviewed the charges to which Honaker was pleading guilty as well as the sentence. The court asked Honaker: "Is there anything about these charges or the penalties, that the Court has not explained to your satisfaction," and Honaker stated: "No." Id. at 5. The court informed Honaker that he had the rights to a public and speedy trial by jury, to cross-examine witnesses, and to call witnesses. The court also explained that Honaker was presumed to be innocent and that the State must prove each and every material allegation beyond a reasonable doubt. Honaker indicated that he understood. During questioning by the court, Honaker indicated that no promises, forces, or threats were used to obtain his guilty plea and that he wished to plead guilty. The court indicated that three of the charges constituted class D felonies, asked Honaker how he pled as to each of the four charges in the amended plea agreement, and Honaker stated that he wished to plead guilty as to each of them.

The court then asked: "Is it just the one case he doesn't . . . want to do a factual basis in?" Id. at 7. Honaker's counsel replied: "No, Your Honor, we were hoping to stipulate to the probable cause with respect to each cause number that he's pleading guilty on." Id. Upon questioning by the court, Honaker indicated that he had gone over these cases with his lawyer. The court then asked Honaker whether he agreed to allow the affidavits finding probable cause to be used to establish a factual basis for his pleas as to each individual charge, and Honaker agreed. When asked by the court whether he had read and reviewed the probable cause affidavits, Honaker stated: "Yes, but it says no

4

contact with . . . whatsoever with the victim . . . uh, I have visitation set up." Id. at 8. The court stated: "Absolutely sir, I will deal with that." Id.

The prosecutor indicated that he had an affidavit for restitution from Waggoner. The court sentenced Honaker to one year suspended to probation for domestic battery, two years suspended to probation for each of the convictions of theft as class D felonies, and two years executed for possession of cocaine. The court also ordered that Honaker pay Waggoner restitution in the amount of $407.

On July 11, 2011, Honaker filed a petition for post-conviction relief. On July 19, 2011, the State filed its answer to Honaker's petition. On January 6, 2012, Honaker filed an amended petition for post-conviction relief. Honaker alleged that he did not knowingly and intentionally plead guilty to three separate felonies, that he thought that he was pleading guilty to one felony, possession of cocaine, and one misdemeanor, domestic battery, and that at the time of his plea he had just finished isolated incarceration in a padded cell for approximately fourteen days after he suffered physical and mental abuse by other prisoners at the Jefferson County Jail. Honaker also alleged that he received ineffective assistance because his attorney failed to adequately inform him of the contents of the plea bargain, particularly that he was pleading guilty to three felonies. That same day, Honaker also filed a document titled "PETITIONER'S ARGUMENT." Appellant's Appendix at 57.

On January 6, 2012, and February 13, 2012, the court held an evidentiary hearing. At the hearing, Honaker's trial counsel testified that there was a "give and take" in negotiation with the prosecutor which was the "operational custom." Transcript at 10.

5

According to trial counsel's testimony, he dealt with Honaker "a lot" after the third and fourth charges were filed and he had "a lot of communication with family members regarding" Honaker. Id. at 12-13. Trial counsel did not remember how many times he discussed the plea bargain with Honaker, but testified that once he has a deal in principle with the prosecutor, he goes to the jail to meet with his client, "walk[s] through it, explain[s] all of the circumstances that are set out, so that we don't have any problems when we get to Court such as misunderstandings." Id. at 20. On cross-examination, trial counsel testified that he read through the plea agreement with Honaker and that Honaker expressed that he was satisfied with the agreement.

Deborah Yount, Honaker's mother, testified that Honaker had been diagnosed with dyslexia and that she thought he was pleading to a felony and everything else would be reduced to misdemeanors. Deborah testified that she knew that no one was going to prosecute with regard to "those rifles and the bayonet." Id. at 59. Deborah also testified that Barbara Yount was her mother and that she was seventy-four years old, very ill, and was under a doctor's order not to come to the hearing.

Honaker testified that he has dyslexia, had seven different types of illegal drugs in his system on the night that he was arrested, was in a padded cell for twenty-seven days, and that the jail "broke" him. Id. at 69. Honaker testified that he spent a total of fifteen to twenty minutes discussing the plea bargain offers with his trial counsel and that he thought he was pleading guilty to possession of cocaine as a class D felony as the only felony. Honaker also testified that he would not have pled to the charges in the plea

6

agreement and that he believed that he had only one felony conviction at the time he wrote a letter thanking trial counsel.

On January 28, 2013, the court denied Honaker's petition for post-conviction relief. The court's order states:

1. Over a nine-month period between March 2006 and December 2006, [Honaker] was charged in four separate cause numbers with five D felonies and four misdemeanors.

2. [Honaker] was arrested on December 16, 2006 and continuously incarcerated until he pled guilty to three felonies and one misdemeanor on March 21, 2007. The remaining charges against him were dismissed.

3. Pursuant to a written plea agreement signed by [Honaker] and filed with the Court, [Honaker] was sentenced to two years on each of the felonies and one year on the misdemeanor. With concurrent and consecutive sentencing, the total term was five years, three of which were suspended to probation.

4. [Honaker] signed the plea agreement on March 21, 2007 and acknowledged "satisfaction with my defense counsel's representation and competency exhibited in this matter." *Plea Agreement*, page 8.

5. [Honaker] further acknowledged "reading and understanding this Agreement and believe this Agreement to be in my best interest." *Plea Agreement*, page 8.

6. Prior to [Honaker's] change of plea, the court advised him of the factual allegations in each cause. After advising [Honaker] of the allegations in the first cause, the court told [Honaker], "That's a Class D Felony[.]" *Defendant's Exhibit D*, page 4, line 9. After advising [Honaker] of the allegations in the second cause, the court told [Honaker], "That is also a Class D Felony." *Defendant's Exhibit D*, page 4, line 14. After advising [Honaker] of the allegations in the third cause, the court told [Honaker], "That also is a Class D Felony." *Defendant's Exhibit D*, page 4, line 19. After advising [Honaker] of the allegations in the fourth cause, the court told [Honaker], "That charge is a Class A Misdemeanor." *Defendant's Exhibit D*, page 4, line 25.

7. The Court also advised [Honaker] of the possible penalties for a D felony and an A misdemeanor, and in so doing, stated, "So for the two . . . three Class D felonies you're pleading to . . . ." *Defendant's Exhibit D*, page 5, lines 4-5.

8. On March 31, 2007, ten days after he pled guilty, [Honaker] wrote his attorney a letter to thank him for his service and acknowledged that "The plea barg[a]in was beyond fa[i]r and I'm grateful for that as well." *Defendant's Exhibit B*.

9. [Honaker] seeks post-conviction relief to set aside his guilty pleas on the ground that they were not knowingly, intelligently, or voluntarily made, and that his trial counsel was ineffective.

10. The Court finds that [Honaker] has not satisfied his burden of proving by a preponderance of the evidence that he did not understand that he was pleading guilty to three separate felonies. The plea agreement and the court's advisements adequately explained the level of the charges to which he was pleading guilty.

11. The Court further finds that [Honaker] has not satisfied his burden of proving by a preponderance of the evidence that he was suffering from drug withdrawal at the time he pled guilty. [Honaker] had been continuously incarcerated for three (3) months prior to his plea which was sufficient time for any withdrawal he experienced to have ceased.

12. The Court further finds that [Honaker] has not satisfied his burden of proving by a preponderance of the evidence that he was acting under duress due to mistreatment at the Jefferson County Jail. [Honaker's] trial counsel reviewed the plea agreement with [Honaker] and noted nothing unusual about his mental state. Counsel was also unaware of any problems [Honaker] may have had with any jail officers.

13. The Court further finds that [Honaker] has not satisfied his burden of proving by a preponderance of the evidence that he was suffering from any learning disabilities at the time he signed the plea. [Honaker] wrote two letters to his counsel which were well-written, cogent, and do not indicate a lack of ability to write or think clearly.

14. The Court further finds that [Honaker] has not satisfied his burden of proving by a preponderance of the evidence that his trial counsel was ineffective. [Honaker] faced sixteen (16) years in prison on the

charged offenses, and ten (10) years in prison on the felonies and misdemeanor to which he pled guilty. His trial counsel, however, negotiated a plea deal that resulted in [Honaker] serving only two years in prison which was a substantial benefit to him. Trial counsel reviewed the plea agreement with [Honaker] before [Honaker] signed it. Finally, [Honaker] acknowledged satisfaction with his counsel's representation, thanked him for his service, and voluntarily expressed that the plea bargain was "beyond fair."

Appellant's Appendix at 65-68.

## DISCUSSION

Before discussing Honaker's allegations of error, we note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Fisher, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. Id. Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1(6). Id. "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." Id. In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. Id. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. Id.

9

Honaker argues that: (A) there was an insufficient factual basis for the plea; and (B) that his guilty pleas were not voluntarily, knowingly, and intelligently made and his trial counsel was ineffective.

A.     Factual Basis for Plea

Honaker argues that there was an insufficient factual basis for the plea. He contends that he was never asked specific facts about each case or asked if that is what happened, and that he was merely asked in generalities about the charges and stipulated to the probable cause affidavits.

The State argues that this issue has been forfeited because Honaker did not assert such a claim in his petition for post-conviction relief, and that Honaker did not have a meritorious claim.

In his reply brief, Honaker argues that he has not waived this issue and that his post-conviction counsel injected the issue of an insufficient factual basis when in opening argument he stated "the transcript itself does not have a factual basis for the Court to accept the pleas . . . ." Appellant's Reply Brief at 8 (quoting Transcript at 6). He asserts that "[w]hile the term 'factual basis' is not contained in the Petition or Amended Petition, it is evidence that this issue is also linked with whether Honaker's plea was entered knowingly and voluntarily." Id. He further maintains that the prejudice to him of the insufficient factual basis "lies with and is interconnected with the notion that the insufficient factual basis contributed to Honaker's plea being involuntary." Id. at 10.

Even assuming that Honaker did not waive this issue, we cannot say that his argument requires reversal. Ind. Code § 35-35-1-3(b) provides that "[t]he court shall not

enter judgment upon a plea of guilty or guilty but mentally ill at the time of the crime unless it is satisfied from its examination of the defendant or the evidence presented that there is a factual basis for the plea." A factual basis may be established by relatively minimal evidence about the elements of the crime from which the court could reasonably conclude that the defendant is guilty. Rhoades v. State, 675 N.E.2d 698, 700 (Ind. 1996). A trial court's finding of an adequate factual basis is presumptively correct. Id. Additionally, the standard for a sufficient factual basis to support a guilty plea is less rigorous than that required to support a conviction. Id. at 702. "Reasonably concluding" that a defendant is guilty for purposes of a factual basis is not the same as concluding guilt beyond a reasonable doubt. Id.

We find Zavesky v. State, 514 N.E.2d 658 (Ind. Ct. App. 1987), instructive. In that case, David Zavesky appealed the denial of his petition for post-conviction relief and argued that the trial court erred in concluding that a factual basis existed for his guilty plea because the trial judge did not examine him on the evidence. 514 N.E.2d at 659. This Court held that case law has interpreted Ind. Code § 35-35-1-3(b) "to mean that 'a trial court may not accept a guilty plea unless it is satisfied there is a sufficient factual basis for the plea.'" Id. (quoting Dearman v. State, 500 N.E.2d 1161, 1163 (Ind. 1986)). The Court also held that "[e]vidence other than the sworn testimony of the defendant can serve as an adequate basis for accepting a guilty plea." Id. (citing Dearman, 500 N.E.2d at 1163). The Court then observed that the trial judge considered the probable cause affidavit, that Zavesky did not object to the admission of the affidavit into evidence, nor did he claim the affidavit contained insufficient evidence of guilt. Id. The Court

11

concluded that the trial judge did not err by considering only the probable cause affidavit in determining that a factual basis existed for Zavesky's guilty plea. Id.

The record reveals that Honaker's counsel indicated that Honaker was hoping to stipulate to the probable cause affidavits with respect to each cause number.[1] Upon questioning by the court, Honaker indicated that he had gone over the cases with his lawyer and that he agreed to allow the probable cause affidavits to be used to establish a factual basis for his pleas as to each individual charge. Honaker also indicated that he had read and reviewed the probable cause affidavits. Based upon our review of the record, we cannot say that this issue requires reversal. See id.

B.    Ineffective Assistance & Guilty Plea

Honaker argues that his guilty plea was not entered knowingly, voluntarily, and intelligently, that he received ineffective assistance of counsel, and that "the issue of ineffectiveness was somewhat intertwined with the issue of whether [his] plea was knowing, voluntary, and intelligent." Appellant's Reply Brief at 6. Honaker also asserts that the issue involving the factual basis is linked with whether his plea was entered knowingly and voluntarily, that he thought he was pleading guilty to only one felony noting his dyslexia, that some of the provisions in the plea agreement were left blank but were initialed by him, that trial counsel spent a minimal amount of time reviewing the plea agreement, that he had problems with jail staff and spent time in a padded cell on suicide watch, and that he was withdrawing from drugs at the jail. He posits that the three felony convictions have proven to be a deterrent for employers wishing to hire him

_____

[1] Honaker does not specifically allege that his trial counsel was ineffective for indicating his request to stipulate to the probable cause affidavits.

12

and that there would have been no prosecution for the theft cases because they involved family members.

The State argues that Honaker received a substantial benefit from his plea, that the record does not support his claim that he thought he was pleading guilty to only one felony, and that he does not demonstrate that the provisions he signed in the plea agreement that were left blank were material to his decision to plead guilty. The State also contends that his assertion that there would have been no prosecution for the theft cases because they involved family members merely suggests that a different outcome was possible had there been no guilty plea, but does not show a reasonable probability of that outcome.

Generally, to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. Coleman v. State, 694 N.E.2d 269, 272 (Ind. 1998) (Ind. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687-696, 104 S. Ct. 2052, 2064-2069 (1984), reh'g denied). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. French v. State, 778 N.E.2d 816, 824 (Ind. 2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Perez v. State, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. French, 778 N.E.2d at 824.

13

Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. Id.

When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Morgan v. State, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." Williams v. State, 771 N.E.2d 70, 73 (Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. Clark v. State, 668 N.E.2d 1206, 1211 (Ind. 1996), reh'g denied, cert. denied, 520 U.S. 1171, 117 S. Ct. 1438 (1997). "Reasonable strategy is not subject to judicial second guesses." Burr v. State, 492 N.E.2d 306, 309 (Ind. 1986). We "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." Whitener v. State, 696 N.E.2d 40, 42 (Ind. 1998).

Because Honaker was convicted pursuant to a guilty plea, we must analyze his claims under Segura v. State, 749 N.E.2d 496 (Ind. 2001). Segura categorizes two main types of ineffective assistance of counsel cases. The first category relates to "an unutilized defense or failure to mitigate a penalty." Willoughby v. State, 792 N.E.2d 560, 563 (Ind. Ct. App. 2003), trans. denied. With respect to this category, the Court held that "in order to establish that the guilty plea would not have been entered if counsel had performed adequately, the petitioner must show that a defense was overlooked or

14

impaired and that the defense would likely have changed the outcome of the proceeding."

Segura, 749 N.E.2d at 499. The Court also held that "in the case of claims related to a defense or failure to mitigate a penalty, it must be shown that there is a reasonable probability that a more favorable result would have obtained in a competently run trial." Id. at 507. The second category relates to "an improper advisement of penal consequences," and this category has two subcategories: (1) "claims of intimidation by exaggerated penalty or enticement by an understated maximum exposure;" or (2) "claims of incorrect advice as to the law." Id.

Honaker contends that his claim falls under the second category involving claims of promised leniency. In Segura, the Court concluded:

> [I]n order to state a claim for postconviction relief a petitioner may not simply allege that a plea would not have been entered. Nor is the petitioner's conclusory testimony to that effect sufficient to prove prejudice. To state a claim of prejudice from counsel's omission or misdescription of penal consequences that attaches to both a plea and a conviction at trial, the petitioner must allege, in Hill's terms, "special circumstances,"[2] or, as others have put it, "objective facts"[3] supporting the conclusion that the decision to plead was driven by the erroneous advice.

> We believe a showing of prejudice from incorrect advice as to the penal consequences is to be judged by an objective standard, i.e., there must be a showing of facts that support a reasonable probability that the hypothetical reasonable defendant would have elected to go to trial if properly advised. Nevertheless, . . . a petitioner may be entitled to relief if there is an objectively credible factual and legal basis from which it may be concluded that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill[ v. Lockhart, 474 U.S. 52,] 59, 106 S. Ct. 366 [(1985)].

---

[2] Hill [v. Lockhart, 474 U.S. 52, 60, 106 S.Ct. 366 (1985)].

[3] McCleese v. United States, 75 F.3d 1174, 1179 (7th Cir. 1996); State v. Donald, 198 Ariz. 406, 10 P.3d 1193, 1201 (Ct. App. 2000)[, review denied, cert. denied, 534 U.S. 825, 122 S. Ct. 63 (2001) ].

[F]or claims relating to penal consequences, a petitioner must establish, by objective facts, circumstances that support the conclusion that counsel's errors in advice as to penal consequences were material to the decision to plead. Merely alleging that the petitioner would not have pleaded is insufficient. Rather, specific facts, in addition to the petitioner's conclusory allegation, must establish an objective reasonable probability that competent representation would have caused the petitioner not to enter a plea.

Id. at 507.

The Court also held:

Whether viewed as ineffective assistance of counsel or an involuntary plea, the postconviction court must resolve the factual issue of the materiality of the bad advice in the decision to plead, and postconviction relief may be granted if the plea can be shown to have been influenced by counsel's error. However, if the postconviction court finds that the petitioner would have pleaded guilty even if competently advised as to the penal consequences, the error in advice is immaterial to the decision to plead and there is no prejudice.

Id. at 504-505. Thus, it is immaterial whether Honaker's claim is of an involuntary plea or ineffective assistance of counsel. See Willoughby, 792 N.E.2d at 563 (citing Segura and holding that it was immaterial whether the petitioner's claim was characterized as an involuntary plea or ineffective assistance of counsel because, under either standard, the petitioner must demonstrate that the intimidation resulting from his trial counsel's failure to inform him of the single larceny rule was material to his decision to plead guilty), trans. denied.

Honaker's trial counsel testified at the post-conviction hearing that he dealt with Honaker "a lot" after the third and fourth charges were filed, had "a lot of communication with family members regarding" Honaker, and that generally once he has a deal in

principle with the prosecutor, he goes to the jail to meet with his client, "walk[s] through it, explain[s] all of the circumstances that are set out, so that we don't have any problems when we get to Court such as misunderstandings." Transcript at 12-13, 20. On cross-examination, trial counsel testified that he read through the plea agreement with Honaker and that Honaker expressed that he was satisfied with the agreement.

At the guilty plea hearing, the court questioned Honaker regarding whether he understood the amended plea agreement, and Honaker replied: "Yes." Defendant's Exhibit D at 4. The court reviewed the charges to which Honaker was pleading guilty, stated that three of the charges constituted class D felonies, and reviewed the possible sentences. The court also stated: "So for the two . . . three Class D Felonies you're pleading to, the minimum sentence is . . . ." Id. at 5. The court asked Honaker: "Is there anything about these charges or the penalties, that the Court has not explained to your satisfaction," and Honaker replied: "No." Id. The court later asked Honaker how he pled as to each of the individual four charges in the amended plea agreement, and Honaker stated that he wished to plead guilty as to each of them. Upon questioning by the court, Honaker indicated that he had gone over these cases with his lawyer. His statements at the plea hearing were coherent and responsive. He does not assert that he was suffering from the effects of withdrawal at the time he actually pled guilty.

To the extent Honaker argues that there would have been no prosecution for the theft cases because they involved family members, we observe that he points to only the testimony of Deborah Yount who testified that no one was going to prosecute with regard to "those rifles and the bayonet." Id. at 59. Deborah was not listed as a victim in either

17

of the theft charges.  We also observe that, at the guilty plea hearing, the prosecutor indicated that he had an affidavit for restitution from Waggoner, one of the victims of the theft.

Based upon our review of the record, including the plea agreement, the trial court's advisements, Honaker's replies to the court's questioning, and trial counsel's testimony, we cannot say that the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court.  See Dewitt v. State, 755 N.E.2d 167, 170-171 (Ind. 2001) (rejecting the defendant's argument that the post-conviction court erred by concluding that the defendant's decision to plead guilty was knowing, voluntary, and intelligent); Mescher v. State, 686 N.E.2d 413, 414-415 (Ind. Ct. App. 1997) (holding that the defendant's guilty plea was entered into knowingly, voluntarily, and intelligently), reh'g denied, trans. denied.

## CONCLUSION

For the foregoing reasons, we affirm the post-conviction court's denial of Honaker's petition for post-conviction relief.

Affirmed.

VAIDIK, C.J., and NAJAM, J., concur.