**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CHRIS M. TEAGLE**
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JONATHAN R. SICHTERMANN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHRISTINA J. EPPS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 05A02-1207-CR-673 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE BLACKFORD SUPERIOR COURT
The Honorable J. Nicholas Barry, Judge
Cause No. 05D01-1112-FD-471

**March 21, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Christina Epps appeals her convictions for two counts of battery, as Class A misdemeanors, and battery, as a Class B misdemeanor, following a jury trial. She presents three issues for our review:

1. Whether the trial court abused its discretion when it granted the State's motion to reopen its case in chief after the court had granted judgment on the evidence[1] on Count One;

2. Whether the State committed a <u>Doyle</u> violation when it questioned Epps on cross-examination.

3. Whether her sentence is inappropriate in light of the nature of the offenses and her character.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On November 26, 2011, nine-year-old J.W. and his minor cousin were walking their grandmother's puppy around J.W.'s neighborhood in Blackford County. Epps, who was a neighbor of J.W. and his mother, Megan West, became upset after the boys and the puppy walked past her house a third time.[2] Accordingly, Epps walked over to West's house to confront her.

West was outside in her front yard when she saw Epps approaching. West immediately called the police, but was placed on hold. In the meantime, Epps stood nose-to-nose with West and yelled at her, complaining about the boys and the puppy

---

[1] The parties and trial court refer to a directed verdict on Count One, but the proper term is judgment on the evidence. <u>See</u> Ind. Trial Rule 50.

[2] Epps had previously complained to J.W.'s mother, Megan West, that J.W. had permitted the puppy to urinate and defecate in her front yard without cleaning it up. The police had ultimately intervened and encouraged Epps and West to stay away from each other's property.

walking in front of her house. Then Epps "busted [West] as hard as she could with her chest and sent [West] flying backwards." Transcript at 25. Epps tried to punch West, but West evaded the punch. Epps then punched West's mother, who was standing next to them. Epps proceeded to punch West on various parts of her body. West was yelling at Epps to leave her property, but Epps refused. At some point, J.W. approached the two women, and Epps pushed him and "slammed him down in the gravel." Id. at 64. Epps then "stepped on [J.W.] and the dog[.]" Id. at 65.

West then went inside her house to retrieve a baseball bat, but she could not find one. Epps tried to make her way into the house, but West's mother stopped her. Eventually, the police arrived and questioned Epps, West, and several eyewitnesses.[3]

The State charged Epps with battery, as a Class D felony, and two counts of battery, as Class A misdemeanors. A jury found Epps guilty of two counts of battery, as Class A misdemeanors; and one count of battery, as a Class B misdemeanor. The trial court entered judgment of conviction accordingly and sentenced Epps as follows: one year each for the Class A misdemeanor convictions, to run consecutively, and 180 days for the Class B misdemeanor conviction, to run concurrent with the other two sentences, for an aggregate sentence of two years, all suspended to probation. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Motion to Reopen State's Case in Chief

Epps first contends that the trial court abused its discretion when it granted the State's motion to reopen its case in chief after the court had granted Epps' motion for

---

[3] Members of Epps' family had accompanied her to West's yard but did not participate in the melee.

judgment on the evidence on Count One, battery, as a Class D felony. A party should generally be afforded the opportunity to reopen its case to submit evidence that could have been part of its case in chief. Saunders v. State, 807 N.E.2d 122, 126 (Ind. Ct. App. 2004). Whether to grant a party's motion to reopen its case after having rested is a matter committed to the sound discretion of the trial judge. Id. The factors that weigh in the exercise of discretion include whether there is prejudice to the opposing party, whether the party seeking to reopen appears to have rested inadvertently or purposely, the stage of the proceedings at which the request is made, and whether any real confusion or inconvenience would result from granting the request. Id.

Here, during the State's case in chief, the Prosecutor forgot to present evidence of Epps' age, which is an element of the offense of battery, as a Class D felony, as charged in the information.[4] Accordingly, after the State rested, Epps moved for judgment on the evidence on that count. The trial court granted Epps' motion and entered judgment on the evidence in favor of Epps on Count One. Moments later, the State moved to reopen its case in chief to present evidence of Epps' age. The trial court granted that motion, and the State recalled Grant County Sheriff's Deputy Stephen Hurd to testify regarding Epps' age. Deputy Hurd had been the State's final witness, so he had just finished his testimony prior to Epps' motion for judgment on the evidence.

In essence, Epps maintains that because the trial court had already granted her motion for judgment on the evidence on Count One, the court could not exercise its discretion to reverse the judgment on the evidence and permit the State to reopen its case

---

[4] Indiana Code Section 35-42-2-1 provides in relevant part that battery is a Class D felony if it is committed by a person at least eighteen years old against a person less than fourteen years old.

4

in chief. Epps contends that she was prejudiced in that, had the trial court not reversed the judgment on the evidence, she would not have been convicted of battery, as a Class B misdemeanor. Epps also contends that the State should not have been permitted to reopen its case in chief because it "did not rest inadvertently" but "rested purposefully." Brief of Appellant at 11. We cannot agree.

In Sanders v. Ryan, 112 Ind. App. 470, 41 N.E.2d 833, 836 (1942), we reversed the trial court's denial of the plaintiff's motion to reopen the evidence after the court had granted the defendant's motion for judgment on the evidence. We observed that

> "[w]hile a trial judge has some discretion in refusing a request to reopen the case to supply testimony adequate to avoid a nonsuit, yet this discretion should be liberally exercised in behalf of allowing the whole case to be presented. It is the usual course to allow the additional evidence, and, whenever the trial judge refuses to allow it, some good reason should appear for such exercise of his discretion. The trial of a case is not a mere game for testing the skills and vigilance of contesting lawyers, but is an investigation instituted for the purpose of ascertaining truth."

Id. (quoting Ellenberg v. Southern Ry. Co., 5 Ga. App. 389, 63 S.E. 240, 241 (1908)). And in Quigg Trucking v. Nagy, 770 N.E.2d 408, 412 (Ind. Ct. App. 2002), after citing Sanders with approval, this court observed that the purpose of a judgment on the evidence is to "assure the full presentation of evidence, not to penalize trial counsel or a party when an important piece of evidence has been overlooked in the presentation of a case."

Here, each of the factors set out in Saunders mitigates in favor of the trial court's decision to permit the State to reopen its case in chief. First, that the defendant was over the age of eighteen was very likely obvious to the jurors, given that she was thirty-six years old at the time of trial. Second, there was hardly any delay between the time that

5

Epps moved for judgment on the evidence and the State moved to reopen its case. Third, the trial court expressly found that the State had inadvertently rested its case without having proved Epps' age. Finally, given that Deputy Hurd had just finished testifying and immediately retook the stand for a matter of minutes in order to establish Epps' age, there is no apparent confusion or inconvenience as a result of the trial court's grant of the State's motion to reopen its case. Epps has not shown that the trial court abused its discretion on this issue.

**Issue Two: Alleged <u>Doyle</u> Violation**

Epps next contends that the trial court "fundamentally erred in allowing the State to question [Epps] over objection about the fact that post-detention and/or post-arrest, she did not engage in conversation with the police about the injuries she sustained in the altercation." Brief of Appellant at 12. She maintains that the State committed a <u>Doyle</u> violation when it engaged in that questioning on cross-examination. We cannot agree.

In <u>Morgan v. State</u>, 755 N.E.2d 1070, 1074 (Ind. 2001), our supreme court explained as follows:

> A person in custody who is questioned by the police has the right to remain silent, <u>Miranda v. Arizona</u>, 384 U.S. 436, 445 (1966), and, in general, a criminal defendant may not be penalized at trial for invoking the right to remain silent. <u>See</u> <u>Doyle v. Ohio</u>, 426 U.S. 610, 620 (1976). Using a defendant's post-<u>Miranda</u> silence to impeach a defendant at trial violates the Due Process Clause of the Fourteenth Amendment. <u>See</u> <u>Doyle</u>, 426 U.S. at 619;[] <u>Miranda</u>, 384 U.S. at 445.

However,

> Although evidence of a defendant's post-<u>Miranda</u> silence is generally not admissible, the defendant may open the door to its admission. The <u>Doyle</u> Court acknowledged this in its decision, stating[,] "[I]t goes almost without saying that <u>the fact of post-arrest silence could be used by the prosecution</u>

6

to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest." Doyle, 426 U.S. at 619.  As we explained in Willsey v. State:

> [T]he central constitutional inquiry is the 'particular use to which the post-arrest silence is being put. . . .  Doyle does not impose a prima facie bar against any mention whatsoever of a defendant's right to request counsel, but instead guards against the exploitation of that constitutional right by the prosecutor.'

698 N.E.2d 784, 793 (Ind. 1998) (quoting Lindgren v. Lane, 925 F.2d 198, 202 (7th Cir. 1991)).

> It follows that the prosecutor may comment on a defendant's post-Miranda silence in limited circumstances as long as it is not used to exploit a defendant's constitutional rights.  See Vitek v. State, 750 N.E.2d 346, 350 (Ind. 2001).

Id. at 1075 (emphasis added).

Here, on direct examination, Epps testified that West had grabbed Epps' arm during the altercation and that she had sustained bruising and scratches as a result.  Epps also testified that West had punched her.  On cross-examination, the Prosecutor asked Epps whether she had told Deputy Hurd about her injuries, and Epps replied:

> Yes, I did actually.  I told him that she had hit me in the upper chest area. That she had a hold of my arm.  The only thing [Deputy Hurd] was interested in finding out from me at that point in time was did you leave her property when you were told [to.]  I told him that I got punched in the upper area up here.  It was sore.  It hurt. . . .  He wasn't interested.  Didn't look.  Didn't physically view me at all.  Everything was one-sided on what [West] wanted.

Transcript at 127-28 (emphasis added).  Then, on re-direct examination, Epps reiterated that West had grabbed her arm and caused injury to Epps.  And on re-cross examination, the Prosecutor asked Epps "at what point" she went to the police officers to "show them these injuries that [she had] sustained[.]"  Id. at 133.  Defense counsel objected and

suggested that the question implicated her right to remain silent under the Fifth Amendment to the United States Constitution. The trial court overruled the objection.

We hold that there was no <u>Doyle</u> violation here. Epps testified that she told Deputy Hurd about her injuries, but that he "wasn't interested." <u>Id.</u> at 128. That testimony opened the door to the Prosecutor's question about whether Epps had attempted to show Deputy Hurd or any other Sheriff's deputy the bruising or scratches she had claimed she sustained in the altercation with West. <u>See</u> <u>Morgan</u>, 755 N.E.2d at 1075 (holding defendant's testimony suggesting police "were not interested in hearing Defendant's version of events" opened the door to the prosecutor's comments that nothing had prevented the defendant from contacting police to tell his version of events). Because there was no <u>Doyle</u> violation, Epps' reliance on <u>Bevis v. State</u>, 614 N.E.2d 599 (Ind. Ct. App. 1993), is misplaced.

**Issue Three: Sentence**

Epps next contends that her sentence is inappropriate in light of the nature of the offenses and her character. Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution "authorize [ ] independent appellate review and revision of a sentence imposed by the trial court." <u>Roush v. State</u>, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). <u>Id.</u> Revision of a sentence under Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of the nature of his offenses and his character. <u>See</u> App. R. 7(B); <u>Rutherford v. State</u>, 866 N.E.2d 867, 873 (Ind. Ct. App.

8

2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. Gibson v. State, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." Roush, 875 N.E.2d at 812 (alteration original).

The Indiana Supreme Court more recently stated that "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented. See id. at 1224. The principal role of appellate review is to attempt to "leaven the outliers." Id. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." Id. at 1224.

Epps first contends that her sentence is inappropriate in light of the nature of the offenses. She asserts that West shared culpability in that both of them had "contributed to the events leading to the altercation" at issue here. Brief of Appellant at 15. Further, Epps maintains that she was a victim of West's physical attack and that "none of the victims suffered injuries which required medical treatment." Id. But the evidence shows that Epps pushed J.W., a nine-year-old boy, and "slammed him down in the gravel." Transcript at 64. Epps then "stepped on [J.W.] and the dog[.]" Id. at 65. Epps also

9

punched West's mother. We cannot say that Epps' two-year suspended sentence is inappropriate in light of the nature of the offenses.

Epps also contends that her sentence is inappropriate in light of her character. In support of that contention, Epps asserts that: she has no criminal history; she and West no longer live near each other so "another altercation is less likely"; and she is a "mother with children living with her." Brief of Appellant at 15. But the evidence shows that Epps' character is poor. In particular, in response to two young boys walking a dog in front of her house, Epps immediately confronted West with verbal and physical aggression. Epps initiated the altercation knowing that children were present, and she physically assaulted a nine-year-old boy and his grandmother. We cannot say that Epps' sentence is inappropriate in light of her character.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.