# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 15 2015, 6:28 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Victoria Christ
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Kelly A. Miklos
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

John W. Taylor, IV,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

July 15, 2015

Court of Appeals Case No.
20A03-1411-PC-396

Appeal from the Elkhart Circuit Court

The Honorable Terry C. Shewmaker, Judge

Cause No. 20C01-1308-PC-52

**Brown, Judge.**

[1]     John W. Taylor, IV, appeals the denial of his petition for post-conviction relief. Taylor raises one issue which we revise and restate as whether the post-conviction court erred in denying his petition for relief. We affirm.

*Facts and Procedural History*

[2]     The relevant facts as discussed in Taylor's direct appeal from his three convictions of attempted murder follow:

> On October 26, 2011, Chamar Jackson (Jackson) and Avery Copeland (Copeland) walked to a fast food restaurant in Elkhart County, Indiana to visit their friend, Chynna Sipili (Sipili), who was employed there. When they arrived at the restaurant, Taylor was standing near the soda dispensers. Taylor and Sipili had just split up the previous day after Sipili had sent him a text message informing him that she needed space. When Jackson approached the counter to speak with Sipili, he was stared down by Taylor who told him to stop talking to his girlfriend. Jackson continued to talk to Sipili, and Taylor stormed angrily out of the restaurant. Thereafter, Jackson and Copeland returned to Copeland's house. Michael Raeder (Raeder) noticed them standing outside the residence and pulled up in his vehicle. Jackson and Copeland got in Raeder's car, intending to smoke marijuana together.
>
> Approximately ten to thirty minutes after Jackson and Copeland had left the fast food restaurant, Taylor returned and angrily confronted Sipili. He told her, "I swear to God after work I'll kill you and them niggas." (Transcript p. 340). Taylor again stormed out of the restaurant.
>
> Meanwhile, Jackson, Copeland, and Raeder were sitting in Raeder's vehicle. Raeder was in the driver's seat, Jackson in the front passenger seat, and Copeland was in the rear seat on the driver's side. While they were talking, Taylor drove up in his car. He pulled up next to Raeder's car and jumped out, carrying a large black rifle. He rapidly approached Raeder's vehicle. He walked to the driver's side of the car and stopped approximately ten feet away. Without saying anything, Taylor first started firing into the passenger compartment where

Copeland was sitting. He then fired into the driver's seat. The vehicle became "riddled with bullets" and both of the driver's side windows were shot out. (Tr. p. 490). Jackson jumped out of the car and rolled underneath, Copeland laid flat on the backseat, and Raeder curled up into a ball with his hands up, then opened the door of the car and tried to crawl to the trunk. As Taylor walked around the car firing the rifle, he lowered his aim from the window level down into the body of the car. Following the shooting, police officers and ambulances arrived at Copeland's house. Jackson was not injured, Copeland was shot in the back, and Raeder received a shrapnel wound to the head and a bullet penetrated his right arm above the elbow.

After the shooting, Taylor went to his sister's apartment where he spoke with Sarah Lemon (Lemon). He told Lemon that he thought he had killed Jackson. Police officers also found a note, written by Taylor, which read, "I'm Killin' niggas put em' in the dirt . . . The choppa is under the cou[c]h . . . Domo." (State's Exh. 21). The police searched Taylor's sister's home and found a black rifle under her couch in the living room. Ten shell casings and bullet fragments recovered from the scene were later determined to have been fired from the rifle recovered by the police.

*Taylor* v. State, No. 20A03-1208-CR-365, slip op. at 2-4 (Ind. Ct. App. April 3, 2013).

[3] On October 31, 2011, the State charged Taylor with three counts of attempted murder. *Id.* at 4. A jury found Taylor guilty as charged. *Id.* On August 9, 2012, the court sentenced Taylor to thirty-five years on Count I, forty years on Count II, to be served consecutive to Count I, and forty years on Count III, to be served concurrent with Count II. *Id.* Taylor appealed and argued that the State failed to present sufficient evidence. *Id.* at 4-6. Specifically, Taylor argued that because the injuries were not severe, Taylor did not have the requisite intent to kill and merely committed a reckless act by firing a rifle at

close range to people. *Id.* at 5. In addressing Taylor's argument that the evidence was insufficient on direct appeal, this court stated:

> We find that the fact that the victims' injuries were not more severe merely proves that Taylor is a bad marksman; his actions and words clearly belie his intent to kill the three occupants of the vehicle. When he approached Raeder's car, he walked up to the driver's side and started firing indiscriminately. He methodically walked around the car, moving his aim from window level down to the body of the car. When he stopped firing, the vehicle was riddled with bullets and both of the driver's side windows were shot out. The rifle was so powerful that a bullet penetrated the outside wall of Copeland's residence, 172 feet away, and was located in an inner hallway of the house. Prior to the shooting, Taylor had told Sipili that he would kill her "and them niggas." (Transcript p. 340). Later, after the shooting, Taylor told Lemon that he thought he had killed Jackson. And in a note, Taylor stated, "I'm Killin' niggas[.]" (State's Exh. 21).

*Id.* at 5-6. This court affirmed. *Id.* at 6.

[4] On August 5, 2013, Taylor filed a petition for post-conviction relief. Taylor by counsel later filed an amended petition and alleged that his trial counsel was ineffective.

[5] On June 12, 2014, the court held a hearing. On October 21, 2014, the court denied Taylor's petition. The order states in part:

> 21. [Taylor] alleges that his trial counsel . . . was ineffective for failing to request an instruction on a lesser-included offense of aggravated battery for Counts I and II, and attempted aggravated battery for Count III. [Taylor] contends that aggravated battery is an inherently lesser-included offense to attempted murder.
>
> 22. In *Noble v. State*, 725 N.E.2d 842 (Ind. 2000), the Indiana Supreme Court, however, found that the crime of battery is not an inherently

included offense of attempted murder, but that under the specific facts presented in that case, battery was a factually included offense of attempted murder. *Noble*, 725 N.E.2d at 846-47. Compare to the holding in *Meriweather v. State*, 659 N.E.2d 133 (Ind. Ct. App. 1995),[ *trans. denied*,] in which the Court found that the offense of attempted aggravated battery is an inherently lesser included offense of attempted murder. *Meriweather*, [659] N.E.2d at 142. Then, in *Young v. State*, 11 N.E.3d 964 (Ind. Ct. App. 2014), the Indiana Court of Appeals found that under the circumstances of that particular case, a conviction of attempted aggravated battery as a lesser included offense to murder was not appropriate. *Young*, 11 N.E.2d 3d [sic] at 967-68.[1] Clearly, this issue is not well settled by existing case law.

23. [Trial counsel] testified during the post conviction hearing that he did not believe aggravated battery was an inherently lesser-included offense to attempted murder. [Taylor's] opinion that [his trial counsel's] belief in this regard is incorrect is not fully supported by case law. Rather, as discussed hereinabove, the case law is confusing: aggravated battery may be inherently included or factually included, but in any event, in [sic] depends on the factual circumstances of each case. Further, in either event, aggravated battery is a crime requiring a knowing or intentional culpability, not recklessness. [Trial counsel] testified that his arguments at trial were that [Taylor] did not act with the specific intent to kill; but argued for reckless rather than intentional conduct. [Trial counsel] said that he believed the State's evidence was pretty good and that his strategy was to diffuse the evidence of intent to kill, so he thought his "reckless" argument was the way to go. [Trial counsel] also said that he thought battery made no sense because the facts were so egregious, and that if he had to do it again, he would approach the defense the same way.

24. The court concludes that [trial counsel] sufficiently articulated a strategy by indicating that he made a professional decision about what approach to use in defending [Taylor], and based on a review of the relevant case law, it cannot be said that [trial counsel's] performance was deficient for not seeking a lesser included offense instruction.

---

[1] The Indiana Supreme Court later vacated the opinion of *Young v. State*, 11 N.E.3d 964 (Ind. Ct. App. 2014).

25. The next issue for the court is whether there is a reasonable probability that the jury would have reached a different decision and not convicted [Taylor] for attempted murder, but would have convicted him of the lesser offense of aggravated battery if such an instruction would have been given. [Taylor] argues that, by not asking for a lesser included offense of aggravated battery, [trial counsel] did not provide the jury with a realistic verdict option. [Trial counsel] is a veteran attorney having practiced criminal defense in Indiana since 1979. He has been the Chief Public Defender in Elkhart County since 1985. In that time he has defended approximately twenty (20) individuals charged with Murder, and won acquittals in at least two (2) of . . . those cases.

26. [Taylor] contends that there is a reasonable probability that the jury would have convicted on aggravated battery, if given that option, because the evidence at trial was that [Taylor] was angry before the crime but did not continue to shoot the victims when he had the opportunity to do so. In considering [Taylor's] sufficiency of the evidence argument on direct appeal, the Indiana Court of Appeals affirmed [Taylor's] convictions and characterized the State's evidence as follows:

"[Taylor] walked up to the driver's side and started firing indiscriminately. He methodically walked around the car, moving his aim from window level down to the body of the car. When he stopped firing, the vehicle was riddled with bullets and both of the driver's side windows were shot out. The rifle was so powerful that a bullet penetrated the outside wall of Copeland's residence, 172 feet away, and was located in an inner hallway of the house. Prior to the shooting, Taylor had told Sipili that he would kill her 'and them niggas.' Later, after the shooting, Taylor told Lemon that he thought he had killed Jackson. And in a note, Taylor stated, 'I'm Killin niggas[.]" *Taylor v. State*, 985 N.E.2d 373 (Ind. Ct. App. 2013), *unpublished and cited for the limited purpose of establishing the law of the case*.

27. Considering the overwhelming and powerful evidence in this case, the court does not find that there is a reasonable probability that the outcome would have been different had the jury been presented with an instructions [sic] on aggravated battery. [Taylor] shot at the victims at point blank range with a semi-automatic rifle. The jury found beyond a reasonable doubt that [Taylor] acted with a specific intent to kill. The evidence was found to be sufficient to sustain the

convictions. [Taylor] has failed to prove prejudice or that he received ineffective assistance of trial counsel.

Appellant's Appendix at 76-79.

### *Discussion*

[6] Before discussing Taylor's allegations of error, we note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Fisher*, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1(6). "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

Taylor argues that his trial counsel should have tendered instructions on aggravated battery and attempted aggravated battery as class B felonies as lesser included offenses of attempted murder. He asserts that the post-conviction court erred by concluding that trial counsel's strategy was informed because counsel did not consider and reject the notion of tendering lesser included options. Taylor posits that the case law was not unclear when he was tried, and that there was a serious evidentiary dispute regarding his intent to kill so the court would have granted a request for the lesser included offense instructions under *Wright v. State*, 658 N.E.2d 563 (Ind. 1995).

The State argues that case law is not clear regarding whether aggravated battery or attempted aggravated battery is a lesser included offense of attempted murder, and that a trial court may have properly denied such instructions based on Indiana Supreme Court precedent. It also contends that trial counsel's strategy was reasonable and if successful would have resulted in a full acquittal. Based upon the evidence, the State contends there was no reasonable possibility that the jury would have convicted Taylor of a lesser included offense and acquitted him of attempted murder.

Generally, to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), *reh'g denied*). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional

norms. *Id.* To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. *French*, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

[10] When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. *Clark v. State*, 668 N.E.2d 1206, 1211 (Ind. 1996), *reh'g denied*, *cert. denied*, 520 U.S. 1171, 117 S. Ct. 1438 (1997). "Reasonable strategy is not subject to judicial second guesses." *Burr v. State*, 492 N.E.2d 306, 309 (Ind. 1986). We "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998).

[11] At the post-conviction hearing, while Taylor's trial counsel testified that he did not consider tendering instructions on aggravated battery or attempted aggravated battery, he testified that his strategy was to demonstrate that Taylor "basically committed an act that was reckless and not an act of attempted murder" and that he was trying to negate specific intent. Post-Conviction Transcript at 7. He stated:

> I – I felt that when one goes to trial you have to make a . . . realistic argument. You have to present something because that's the client's – it's his right to have that done. And the only thing I could attach my brain to was this was an act of anger, but there was no desire to murder these people.

*Id.* at 19. Trial counsel indicated that he used the word "reckless" throughout the trial beginning with *voir dire* and that he attempted to argue that Taylor was acting only recklessly. *Id.* at 23. He stated that the statute governing aggravated battery required a knowing or intentional infliction of injury and that a mere reckless infliction of injury would not be sufficient to convict for aggravated battery. Trial counsel also indicated that if he argued Taylor acted recklessly and then requested a battery instruction, "[i]t would cancel any recklessness that might have been able to be portrayed," that he "was not confident in the defense," and that the "jury would have been very unimpressed with that switch." *Id.* at 26. Trial counsel indicated that it was logical to conclude that the jury must have thought that Taylor intended to kill but was a bad shot. When asked if it was possible that he did not consider battery because battery has the requirement of acting knowingly or intentionally, trial counsel

answered: "I thought the facts were so egregious that the concept of battery was ridiculous and that's more on hindsight than it is at the time, but I can say that today that it just made no sense." *Id.* at 32. Trial counsel also testified:

> And quite frankly, if I had to try this case again, I'd probably do it the same way. Because there was no way, in my opinion, that you can be 10 feet from someone with an SKS and but for the good steel made by the Ford Corporation and Lincoln Town Car it could have gone a different way. There was a round in the headrest. There was testimony that the back wound sustained by one of the individuals was because he was down in a, I believe, cowering position was the term that was used. I'm saying if you don't kill somebody at that range with an SKS with that number of rounds fired you're either lucky or a bad shot or something intervened. I don't know how to put it any other way.

*Id.* at 29. During cross-examination, trial counsel was asked if he would try the case differently and answered:

> That's a good question. I suppose this has to be – well, it is speculation. I guess the real answer would be I don't know. But you've tried cases against me, and I don't think you've ever seen philosophy, pie in the sky, nonsense come out of me. Maybe today, but what I'm saying to you is I try cases realistically, and that's what I tried to do with this case here.

*Id.* at 36. We cannot say that the overall strategy of defense counsel renders his performance deficient.

[12] However, even assuming that the performance of Taylor's trial counsel was deficient, Taylor has failed to show that he was prejudiced. The Indiana Supreme Court has held:

> When a defendant requests an instruction covering a lesser-included
> offense, a trial court applies the three-part analysis set forth in *Wright v.
> State*, 658 N.E.2d 563, 566-67 (Ind. 1995). The first two parts require
> the trial court to determine whether the offense is either inherently or
> factually included in the charged offense. *Id.* If so, the trial court must
> determine whether there is a serious evidentiary dispute regarding any
> element that distinguishes the two offenses. *Id.* at 567; *see also Brown v.
> State*, 703 N.E.2d 1010, 1019 (Ind. 1998). *Wright* held that "if, in view
> of this dispute, a jury could conclude that the lesser offense was
> committed but not the greater, then it is reversible error for a trial court
> not to give an instruction, when requested, on the inherently or
> factually included lesser offense." *Wright*, 658 N.E.2d at 567.

*Wilson v. State*, 765 N.E.2d 1265, 1271 (Ind. 2002). *See also Taylor v. State*, 840 N.E.2d 324, 337 n.4 (Ind. 2006) (addressing a petitioner's claim of ineffective assistance because trial counsel failed to tender a lesser included instruction and noting that petitioner might conceivably have been entitled to an instruction if he was able to satisfy the requirements of *Wright v. State*, 658 N.E.2d 563 (Ind. 1995)).

[13]   The record reveals that Sipili testified that Taylor said: "I swear to God after – after work or something I'll kill you and them niggas or something like that." Trial Transcript at 340. Taylor later pulled up to a vehicle containing Raeder, Jackson, and Copeland, exited his car, and started shooting a SKS or large rifle seconds later. During direct examination, Jackson testified that Taylor was "[n]ot even like 10 feet" away when he started shooting. *Id.* at 302. The vehicle became "riddled with bullets." *Id.* at 490. Based upon the record, we conclude that there was no serious evidentiary dispute regarding whether Taylor intended to kill the victims. The evidence was overwhelming and

evinced an intent to kill. We cannot say that Taylor demonstrated prejudice from the alleged error.

## *Conclusion*

[14] For the foregoing reasons, we affirm the post-conviction court's denial of Taylor's petition.

Crone, J., and Pyle, J., concur.