## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 14 2020, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Daniel I. Hageman
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney L. Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Carl Murray,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

September 14, 2020

Court of Appeals Case No.
20A-CR-428

Appeal from the Marion Superior Court

The Honorable Grant W. Hawkins, Judge

Trial Court Cause No.
49G05-1908-F3-32467

**Bailey, Judge.**

# Case Summary

Carl Murray ("Murray") appeals his convictions for two counts of Attempted Murder, Level 1 felonies,[1] and one count of Domestic Battery, as a Class A misdemeanor.[2] We affirm.

# Issues

Murray presents two issues for review:

I.    Whether there is sufficient evidence to support his conviction for the attempted murder of Y.H.; and

II.    Whether instructing the jury on transferred intent was fundamental error because it conflicted with an instruction on the State's burden of proof.

# Facts and Procedural History

During the summer of 2019, Murray presented his wife, Y.H., with dissolution documents. Y.H. did not sign the documents but the couple separated. Their estrangement was partially due to Murray's accusations that Y.H. was sexually involved with their neighbor and friend, J.J. After the separation, Murray

---

[1] Ind. Code §§ 35-42-1-1, 35-41-5-1.

[2] I.C. § 35-42-2-1.3(a)(1).

would sometimes return to Y.H.'s Indianapolis residence to socialize with friends on the porch or to visit his stepchildren.

[4] On the day of August 10, 2019, Murray was in and out of the residence. He transported his stepdaughter to her friend's house. Atypically, he asked his stepson if he would like to go to his biological father's house, and then drove him there. Around 11:00 p.m., Y.H. and J.J. left to buy cigarettes. When they returned, Y.H. backed her vehicle into her driveway. The pair sat in Y.H.'s vehicle for about twenty-five minutes, drinking and listening to music. Y.H. saw Murray drive his vehicle through an alley and park behind her vehicle.

[5] Murray approached the driver's side of Y.H.'s vehicle, holding a rifle. He opened the door and said, "you mother******* thought this was a game." (Tr. Vol. II, pg. 221.) Y.H. saw that the rifle was pointed toward J.J.'s head and she grabbed the barrel. Murray shot through Y.H.'s right hand pinky finger and Y.H. yelled "mother****** you just shot my finger off." (*Id.* at 222.) Murray continued shooting, until Y.H. was hit with three bullets and J.J. was hit with six bullets.

[6] Inside the residence, Y.H.'s friend Steven Seals ("Seals") had been watching television when he heard Y.H. cry out "no Carl don't" followed by gunshots. (*Id.* at 138.) Seals looked in vain for a weapon, then went outside to confront Murray. Murray approached Seals, rifle in hand, but Seals tackled Murray and flipped him over a porch railing. Seals got Murray into a headlock and used his fists and a brick to strike blows to Murray's head. Seals was able to get control

of Murray's rifle at some point but when Seals tried to fire it, he discovered that it was either empty or jammed. During the struggle, Murray protested that he loved Y.H. and was sorry. When Seals was injured by a brick and lost his grip, Murray escaped the headlock, ran to his truck, and drove off.

[7] Police and emergency medical personnel arrived to find Y.H. and J.J. each in a critical condition. One bullet had struck an artery in Y.H.'s leg. She underwent surgery and was given 5.5 liters of blood, essentially a replacement of her full blood supply. Y.H. was hospitalized for five days. J.J. was placed in a medically induced coma, having suffered injuries to his colon, spleen, diaphragm, spine, and kidney. J.J. endured multiple surgeries, received five liters of blood, and was hospitalized for nineteen days.

[8] On January 6, 2020, Murray was brought to trial before a jury on two counts of Aggravated Battery, Level 3 felonies,[3] two counts of Attempted Murder, Level 1 felonies, and one count of Domestic Battery, as a Level 5 felony. The jury found Murray guilty as charged but, due to double jeopardy concerns, the trial court declined to enter judgments of conviction upon the Aggravated Battery counts and reduced the Domestic Battery conviction to a misdemeanor. Murray received consecutive sentences of thirty years and twenty-five years for the attempted murders of J.J. and Y.H., respectively. He was given a concurrent one-year sentence for Domestic Battery. Murray now appeals.

---

[3] I.C. § 35-42-2-1.5.

# Discussion and Decision

## Sufficiency of the Evidence

[9] Murray does not contest the sufficiency of the evidence supporting his conviction for the attempted murder of J.J. However, he contends that the State presented insufficient evidence of his intent to kill Y.H. He points to a lack of testimony that he deliberately aimed the rifle at Y.H. or verbally threatened Y.H. in particular.

[10] In order to convict Murray of the attempted murder of Y.H., the State was required to prove beyond a reasonable doubt that Murray, acting with the specific intent to commit murder, engaged in an overt act that constituted a substantial step toward the commission of the crime. *Davis v. State*, 558 N.E.2d 811, 812 (Ind. 1990).

[11] When reviewing the sufficiency of the evidence to support a conviction, we will consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We will affirm the conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id.* The requisite intent to commit murder may be inferred from the intentional use of a deadly weapon in a manner likely to cause death. *Davis v. State*, 558 N.E.2d 811, 812 (Ind. 1990). Discharging a weapon in the direction of a victim is substantial evidence from which a jury can infer intent to kill. *Leon v. State*, 525 N.E.2d 331, 332 (Ind. 1988).

[12] Y.H. testified that Murray, armed with a rifle, approached her vehicle, opened the door, and stated "you mother******* thought this was a game." (Tr. Vol. II, pg. 221.) After Murray fired the first shot, which severed Y.H.'s pinky, and Y.H. cursed at him, Murray did not desist. Rather, he continued firing his weapon into the vehicle until it was either empty or jammed. Y.H. was ultimately struck by three bullets. From this evidence, the jury could reasonably conclude that Murray intended to kill Y.H.

## Instruction on Transferred Intent

[13] "The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Dill v. State*, 741 N.E.2d 1230, 1232 (Ind. 2001). Jury instruction is a matter assigned to trial court discretion, and an abuse of that discretion occurs when instructions, taken as a whole, mislead the jury as to the applicable law. *Ham v. State*, 826 N.E.2d 640, 641 (Ind. 2005).

[14] Here, the jury was instructed, in accordance with *Spradlin v. State*, 569 N.E.2d 948, 950 (Ind. 1991), that the jury could convict Murray of Attempted Murder only if it found that he had specific intent to kill. The jury also received an instruction on transferred intent:

> Under the doctrine of Transferred Intent, the intent to harm one
> person may be treated as the intent to harm a different person
> when, through mistake or inadvertence, violence directed toward
> one person results in injury to a different person.

> In a situation where there is an intent to kill one person, but a different person suffers the injury and dies, the intent to kill the first person may serve as proof of the intent to kill the actual victim.

Murray lodged a vague objection: "I have a problem with it because if there's an accident then where's the transferred intent? … For the record, I'm objecting to it." (Tr. Vol. III, pg. 71.) On appeal, he relies upon grounds not asserted at trial, that is, he argues that the transferred intent instruction conflicts with the instruction on specific intent to kill and the State could have secured a conviction upon a lessened burden of proof.

[15] It is well-settled that a defendant may not object to an instruction upon one ground at trial and present a different ground upon appeal. *See Morgan v. State*, 755 N.E.2d 1070, 1077 (Ind. 2001). Murray has therefore waived any such error and may prevail only upon showing fundamental error. Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to "make a fair trial impossible." *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002).

[16] Under the doctrine of transferred intent, a defendant's intent to kill one person is transferred when, by mistake or inadvertence, the defendant kills a third person; thus, the defendant may be found guilty of the murder of the person who was killed, even though the defendant intended to kill another. *Blanche v. State*, 690 N.E.2d 709, 712 (Ind. 1998). "This doctrine also applies to the intent

necessary for attempted murder." *Id.* Murray has shown no conflict or error in the instructions given to the jury, much less fundamental error.

# Conclusion

[17] Sufficient evidence supports Murray's conviction for the attempted murder of Y.H. He has not established fundamental error in the instruction to the jury.

[18] Affirmed.

Vaidik, J., and Baker, Sr. J., concur.